[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 98-9253

_____

D. C. Docket No. 3: 97-CV-83(DF)

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
09/03/99
THOMAS  K. KAHN
CLERK

JOHN BRYANT, On behalf of himself and all others similarly
situated; ROBERT C. EAST, et al.,

Plaintiffs-Appellees,

versus

AVADO BRANDS, INC.;
THOMAS E. DUPREE, et al.

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(September 3, 1999)**

Before ANDERSON, Chief Judge, HILL, Senior Circuit Judge, and COOK\*, Senior
District Judge.

ANDERSON, Chief Judge:

_____

\* Honorable Julian Abele Cook, Jr., Senior U.S. District Judge for the Eastern District of Michigan,
sitting by designation.

INTRODUCTION

This is a securities class action lawsuit brought by shareholders of Apple South, Inc. (now known as "Avado Brands, Inc.") against the corporation and several of its officers. Bryant et al. ("Plaintiffs") allege that Dupree et al. ("Defendants") made false and misleading statements and material omissions in order to inflate the value of the company's stock in violation of the Securities and Exchange Act of 1934. The district court denied Defendants' Motion to Dismiss, but because of the novel questions presented under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 et seq. (West Supp. 1999) ("Reform Act"), certified its order for interlocutory review pursuant to 28 U.S.C. § 1292(b). This Court accepted the petition in order to set out the applicable law. We vacate the order entered by the district court and remand the case for further proceedings consistent with this opinion.

STATEMENT OF FACTS

Accepting all well-pleaded facts in the complaint as true,[1] we assume the following facts. Apple South, Inc., publicly traded on the National Association of Securities Dealers Automated Quotations ("NASDAQ") market under the symbol

---

[1] At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff. See Hawthorne v. MAC Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998).

"APSO," was a corporation that owned and operated several chain restaurants, including "Applebee's Neighborhood Grill and Bar," "Don Pablo's," "Harrigan's," and "Tomato Rumba's."[2] Defendant Thomas E. Dupree, Jr. served as its Chief Executive Officer; Defendant Erich J. Booth served as its Chief Financial Officer; and Defendants Redus, Frazier, and McLeod also served as high-ranking officers during the class period,[3] defined by the complaint as May 26, 1995 through September 24, 1996. During this period, Apple South pursued an aggressive expansion plan, acquiring additional restaurants and expanding its geographic reach. In May 1995, Apple South acquired 18 "Applebee's" restaurants located in the Midwest from the Marcus Corporation. According to Plaintiffs, integrating these new restaurants into Apple South's business model proved a difficult and ultimately unprofitable task. Allegedly, the assimilation was a failure, and hurt the company's core business – its restaurants located in the Southeast – as well. In

---

[2] Apple South changed its name in 1998 to Avado Brands, Inc. and now trades under the symbol "AVDO."

[3] Defendant Marc D. Redus served as Executive Vice President and as an Apple South director during the class period. Plaintiffs' amended complaint alleges that he sold 308,100 shares of his Apple South stock (40% of his holdings) over the course of the class period. Defendant David P. Frazier served as President and a director of Apple South during the class period. The amended complaint alleges that he sold 512,704 shares of Apple South common stock within the class period. Defendant John G. McLeod served as Senior Vice-President of Human Resources and allegedly sold more 100,000 shares during the class period. Defendants Dupree and Booth apparently did not sell any of their Apple South stock during the class period.

3

addition to the difficulties associated with the acquisition of the "Applebee's" restaurants from the Marcus Corporation, Apple South's earlier acquisition of the "Tomato Rumba's" restaurant chain allegedly was similarly proving much less profitable than expected.

According to Plaintiffs, Apple South's top management knew that these two acquisitions were creating internal problems that would eventually negatively affect the company's Earnings Per Share ("EPS"), but failed to disclose these problems in order maintain Apple South's high stock price and analysts' attendant positive outlook on it. Plaintiffs allege that such concealment was necessary to finance the acquisitions and to reduce bank debt.

According to Plaintiffs, the management problems that accompanied Apple South's expansion into the Midwest resulted in a high rate of turnover, forcing Apple South to transfer experienced managers from its core restaurants in the Southeast to shore up its Midwest operations. The relocated managers were unable to improve profit margins. Moreover, the core restaurants, now deprived of experienced employees, suffered a decline as well. Apple South allegedly reacted to these adverse developments by firing employees and cutting retail costs in order to meet short-term EPS estimates, causing the overall level of service to decline and the return customer base to diminish, thereby tainting the company's long-term

4

prospects. Plaintiffs contend that despite these problems, of which top management was allegedly aware because of a sophisticated internal information system of daily sales reports, Apple South continued to pursue its growth model aggressively, while concealing the negative material information described above that would have likely jeopardized the continued viability of that growth model.

Moreover, Plaintiffs allege that Apple South not only concealed the problems associated with its expansion strategy but affirmatively misrepresented the direction in which the strategy was taking the company, telling analysts that the new restaurants would positively impact profit margins, raising them as much as 13% to 17%, and that EPS would grow by 30% over the next five years. According to Plaintiffs, Defendants continued to misrepresent the status of the acquired restaurants' operations, maintaining a rosy outlook on growth, enabling Apple South to perpetuate the upward movement of its stock price so as to facilitate the company's expansion without diluting the value of the insider Defendants' holdings. Plaintiffs claim that during the class period, Apple South sold more than 10 million shares, plus $125 million in debt securities, and also allege that Defendants Frazier, Redus, and McLeod sold more than $19.6 million of their personal holdings in Apple South.

Plaintiffs further assert that Defendants' misrepresentations and omissions

precipitated the climb of Apple South's stock from $15.25 per share, where it traded on May 26, 1995, the start of the class period, to $28.25 per share, its all-time high, by May of 1996. On September 24, 1996, the close of the class period, as summarized by the district court, see Bryant v. Apple South, Inc., 25 F.Supp. 2d 1372, 1375 (M.D. Ga. 1998), Defendants announced that: (1) Apple South's acquisition of 18 restaurants and related franchise territories from the Marcus Corporation had negatively impacted Apple South's business; (2) 1996 EPS would not reflect the 30-35% growth forecasted and would likely not exceed 1995 EPS; and (3) Apple South was scaling back its 1996 and 1997 expansion plans. Shortly after the announcement, the price of Apple South stock fell by 40% to $12.25.

Taking these facts as true, the district court concluded that the Plaintiffs had alleged a good claim on both counts enumerated in the complaint pursuant to the Securities Exchange Act of 1934: (1) count one under Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; and (2) count two under Section 20(a), 15 U.S.C. § 78t(a). See Bryant, 25 F.Supp.2d at 1383. In so holding, the district court granted Plaintiff's Motion to Strike certain documents that Defendants had attached as exhibits to their Motion to Dismiss, and ruled that the standard for pleading scienter under the Reform Act was that formulated by the Second Circuit – that a "strong inference" of scienter could be

raised by: (1) "alleging facts that show the defendants had a motive and opportunity to commit fraud"; or (2) "alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id. at 1379-81 (citing Shields v. Citytrust Bancorp. Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)). Noting that the Reform Act had "not yet been addressed by an appellate court," and further remarking that "there is a distinct difference of opinion among the district courts that have considered the statute's proper interpretation," the district court recommended that our Court permit an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). See Bryant, 25 F.Supp.2d at 1383. We accordingly allowed the appeal.

DISCUSSION

We address two discrete legal issues in the instant appeal. The first involves the proper scope of materials that a district court may consider in ruling on a motion to dismiss in a securities fraud case. The second involves what standard Plaintiffs must meet in this Circuit in order to plead scienter adequately under 15 U.S.C. § 78u-4(b)(2).[4]

_____

[4] We construe the district court's certification under 28 U.S.C. § 1292(b) as certifying only these two questions, which would seem to be the controlling questions of law as to which there may be substantial ground for difference of opinion; or, in any

A. Scope of Motion to Dismiss in Securities Fraud

The district court, granting in part Plaintiffs' Motion to Strike, ruled that

certain exhibits[5] proffered by the Defendants as attachments to their Motion to

event, we exercise our discretion to address only these two questions. The parties expend much of their briefs addressing, <u>inter alia</u>, several arguments relating to the sufficiency of the allegations. We decline to address such arguments, or any other arguments other than the two issues indicated in the text. Of course, to the extent that the district court's previous view of the sufficiency of the allegations is affected by our decision today on the two issues we do decide, the district court will on remand reconsider in light of this opinion.

[5] The district court included the following summary of the stricken exhibits in its order:

| Exhibit | Description |
| --- | --- |
| K | Statements of Changes in Beneficial Ownership, Form 4s, dated September 1, 1995, and March 7, 1996 |
| L | Apple South's Quarterly Report on Form 10-Q for the quarter ending June 30, 1996 |
| M | Apple South's Quarterly Report on Form 10-Q for the quarter ending March 31, 1996 |
| N | Apple South's Quarterly Report on Form 10-Q for the quarter ending July 2, 1995 |
| O | Apple South's Quarterly Report on form 10-Q for the quarter ending October 1, 1995 |
| P | Letter to Apple South's Shareholders dated October 19, 1995, and Notice of Special Meeting of Shareholders to be held November 17, 1995 |
| Q | Apple South's Annual Report on Form 10-K for the year ending December 31, 1995 |
| R | Apple South's Prospectus Supplement dated May 23, 1996 |

Dismiss could not be considered, because the documents embodied matters outside the pleadings.  Bryant, 25 F.Supp.2d 1376-77.  The attachments to the Motion to Dismiss were documents filed with the Securities Exchange Commission ("SEC"),[6] proffered by Defendants in support of two defenses: the "safe-harbor" protection afforded by 15 U.S.C. § 78u-5 and its judicially created equivalent, the "bespeaks caution" doctrine.[7]  The court concluded that it could not consider either defense at

Bryant, 25 F.Supp.2d at 1375.

[6] If any of the documents excluded by the district court were not filed with the SEC, the district court's ruling with respect to such documents will not be affected by our decision because Defendants conceded at oral argument that they were challenging on appeal only the district court's ruling excluding the publicly filed documents.

[7] The Reform Act's safe harbor protects "forward-looking statements" from serving as a basis of liability in private securities fraud suits if the statements qualify as "forward-looking" under 15 U.S.C. §§ 78u-5(i)(1)(A)-(F), and meet any one of the statutory conditions set forth in 15 U.S.C. §§ 78u-5(c)(1)(A)-(B).  15 U.S.C. § 78u-5(i)(1) defines "forward-looking statements" as encompassing, inter alia, projections of revenues, such as EPS estimates, see 15. U.S.C. § 78u-5(i)(1)(A), statements regarding management's future plans and objectives, see 15 U.S.C. § 78u-5(i)(1)(B), and statements regarding future economic performance.  See 15 U.S.C. § 78u-5(i)(1)(C).
Thus, statements in the nature of economic forecasts, such as those listed above, are considered "forward-looking" and may garner the protection of the statutory safe harbor, 15 § U.S.C. 78u-5(c): 1) if they are identified as forward-looking statements and are accompanied by the appropriate cautionary language, see 15 U.S.C. § 78u-5(c)(1)(A)(i); 2) if such statements are immaterial, see 15 U.S.C. § 78u-5(c)(1)(A)(ii); or 3) if the plaintiff fails to prove that the statements were made with actual knowledge of their falsity.  See 15 U.S.C. § 78u-5(c)(1)(B).
The "bespeaks caution" doctrine, the safe harbor's judicially created counterpart, operates similarly, protecting statements in the nature of projections that are accompanied by meaningful cautionary statements and specific warnings of the risks involved, so as to "bespeak caution" to investors that actual results may differ, thereby shielding the statements from § 10(b) and Rule 10b-5 liability.  See Saltzberg v. TM Sterling/Austin

the motion to dismiss stage because both defenses relied upon cautionary statements included in the SEC documents, which the district court had already ruled were outside the pleadings and could not be considered without converting the motion into a motion for summary judgment.

In so concluding, the district court rejected Defendants' argument that the exhibits could be judicially noticed at the 12(b)(6) stage, an argument based on the Second Circuit's opinions in Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991), and Cortec Indus. Inc. v. Sum Holding, L.P., 949 F.2d 42, 47 (2d Cir. 1991). Cortec held that publicly filed SEC documents could be judicially noticed under Fed. R. Evid. 201 at the motion to dismiss stage. Citing Kramer, the Cortec court noted that:

> When a district court decides a motion to dismiss a complaint alleging securities fraud, it may review and consider public documents required by law to be and which actually have been filed with the SEC, particularly where Plaintiff has been put on notice by defendant's proffer of these documents.

Id. at 47. The district court concluded that because the "rule quoted above has not been adopted by the Eleventh Circuit, and the Eleventh Circuit's opinions on the

Assoc., 45 F.3d 399 (11th Cir. 1995)(per curiam)(holding that explicit cautionary language in private placement memorandum rendered alleged misstatements immaterial and made them not actionable under "bespeaks caution" doctrine).

10

subject do not leave room to create an exception to the general rule," the court would "not deviate from the general rule by adopting the Second Circuit's rule from <u>Cortec Industries</u>." <u>Bryant</u>, 25 F.Supp.2d at 1376.[8] After a thorough review of the relevant case law, we approve of the Second Circuit's practice of judicially noticing relevant documents legally required by and publicly filed with the Securities Exchange Commission ("SEC") at the motion to dismiss stage.

The starting point is Fed .R. Evid. 201, which authorizes courts to take judicial notice under specified circumstances.[9] Subsection (f) states that "(j)udicial notice may be taken at any stage of the proceeding." Employing Fed. R. Evid. 201, the Second Circuit in <u>Kramer</u>, 937 F.2d at 774, allowed an Offer to Purchase and Joint Proxy Statement, as documents publicly filed with the SEC, to be proper

---

[8] The "general rule" referred to by the district court is based on Fed. R. Civ. P. 12 (b):

> If on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

In other words, presenting matters outside the pleadings converts the Rule 12(b)(6) motion into a motion for summary judgment.

[9] Fed. R. Evid. 201(b) provides that "a judicially noticed fact must be one not subject to reasonable dispute in that it is . . . (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

11

subjects for judicial notice at the motion to dismiss stage.  The Second Circuit's reasoning is instructive:

> It is highly impractical and inconsistent with Fed. R. Evid. 201 to preclude a district court from considering such documents when faced with a motion to dismiss in a securities action based on allegations of material misrepresentations or omissions.  First, the documents are required by law to be filed with the SEC, and no serious question as to their authenticity can exist.  Second, the documents are the very documents that are alleged to contain the various misrepresentations or omissions and are not relevant to prove the truth of their contents but only to determine what the documents stated.  Third, a plaintiff whose complaint alleges that such documents are legally deficient can hardly show prejudice resulting from the court's studying of the documents.  Were courts to refrain from considering such documents, complaints that quoted only selected and misleading portions of such documents could not be dismissed under Rule 12(b)(6) even though they would be doomed to failure.  Foreclosing resort to such documents might lead to complaints filed solely to extract nuisance settlements.  Finally, we believe that under such circumstances, a district court may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC as facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  This of course includes related documents that bear on the adequacy of the disclosure as well as documents actually alleged to contain inadequate or misleading statements.  We stress that our holding relates to public disclosure documents required by law to be filed, and actually filed, with the SEC, and not to other forms of disclosure such as press releases or announcements at shareholder meetings.

Id. at 774.  The Fifth Circuit in Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1017-18 (5th Cir. 1996) also permitted relevant documents required by law to be filed and which were actually filed with the SEC to be considered on a motion to

dismiss in a securities fraud case, and quoted the reasoning given by the Second Circuit above. Id. at 1018 n.1.  The Fifth Circuit held that "[s]uch documents should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents." Id. at 1018.  Several district courts in our Circuit have likewise employed this reasoning in considering defendants' relevant SEC filings at the 12(b)(6) stage.  See, e.g., In re Physician Corp. of Am. Sec. Litig., No. 97-3678, – F.Supp.2d – (S.D. Fla. Feb. 18, 1999); Malin v. IVAX Corp., 17 F.Supp.2d 1345, 1351 (S.D. Fla.  1998).  The Malin court noted that judicially noticing SEC documents at the 12(b)(6) stage in securities fraud suits was consistent with Congress' intent in drafting the Reform Act, that is, weeding out non-meritorious suits at the earliest possible stage, 17 F.Supp.2d at 1351, and further noted that:

> [Because] the reasoning behind converting a Rule 12(b)(6) motion to dismiss into a motion for summary judgment is to require that the nonmovant receive notice of the movant's submissions in order to address their relevance,  . . . . where those submissions are publicly filed, and indeed where the plaintiff has relied on them in framing the complaint, the necessity of notice is largely dissipated.

Id. at 1351 (citation omitted).

With these principles in mind, and following the foregoing case law, we hold that a court, when considering a motion to dismiss in a securities fraud case, may take judicial notice (for the purpose of determining what statements the

13

documents contain and not to prove the truth of the documents' contents)[10] of

relevant public documents required to be filed with the SEC, and actually filed.

We believe that considering the SEC documents in this manner in the instant case

is permitted by Fed. R. Evid. 201, is consistent with the overall aims of the Reform

Act, and is not inconsistent with Rule 12(b)(6), common notions of fairness, or the

law of this Circuit.

Fed. R. Evid. 201(b) provides for taking judicial notice of facts that are not

---

[10] The Fifth Circuit in Lovelace expressly limited the permissible consideration of such public documents to the determination of what statements the documents contain. See Lovelace, 78 F.3d at 1018. Such limitation was implicit in the Second Circuit's Kramer decision. See Kramer, 937 F.2d at 774 (giving as part of its second reason in support of the rule the fact that the documents "are relevant not to prove the truth of their contents but only to determine what the documents stated"). In the instant case, the propriety of considering the SEC documents arose in a context in which the truth of the statements made in the documents would not be relevant; rather, the only relevance would be what statements the documents actually contain. Defendants' motion to dismiss attached the SEC documents in support of two defenses: the "safe-harbor" protection provided by 15 U.S.C. § 78u-5 for forward-looking statements, and the "bespeaks caution" doctrine. An essential requirement of both defenses involves a showing of meaningful cautionary statements. Thus, it appears that the SEC documents are relevant only to show what cautionary statements the SEC documents contain, not to determine the truth of matters asserted in the documents. Because of this context, we assume defendants in this case seek to use the SEC documents only to show what statements the documents contain, and not to prove the truth of the documents' contents. Accordingly, we have no occasion to address whether or not SEC documents might be judicially noticed in some other case where the truth of those documents was at issue. Therefore, should either party on remand seek to use the SEC documents, not only for the purpose of determining what statements the documents actually contain, but also to prove the truth of the documents' contents, we prefer for the district court to consider in the first instance whether the requirements of Fed. R. Evid. 201 are satisfied and whether it is appropriate to consider such documents for the purpose sought. Indeed, we decline to address any issues in this interlocutory appeal other than the two issues expressly decided.

14

subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. When SEC documents are relevant only to determine what statements or disclosures are actually contained therein, there can be little question as to authenticity, nor can the fact that such statements or disclosures were thus publically filed be reasonably questioned. SEC filings are generally recognized as the most accurate and authoritative source of public information about a company.

Taking judicial notice of relevant SEC filings at the motion to dismiss stage is also consistent with the overall aim of the Reform Act -- curbing abusive securities litigation. An important component of achieving this goal was structuring the legislation to permit the dismissal of frivolous cases at the earliest feasible stage of the litigation, thereby reducing the cost to the company, and by derivation, to its shareholders, in defending a baseless action. See H.R. Conf. Rep. No. 104-369, at 28 (1995), reprinted in U.S.C.C.A.N. 679, 748. Examples of the

foregoing are 15 U.S.C. § 78u-5(e)[11] and 15 U.S.C. § 78u-4(b)(3)(B).[12]  The former

section directs a court to consider a cautionary statement at the motion to dismiss

stage under the particular circumstances specified in that section.  If the

requirements of the section are satisfied, a cautionary statement must  be

considered by the court even though it was not itself included in the complaint.

The latter section provides for a stay of discovery during the pendency of a motion

to dismiss, again under the circumstances set forth in the section.   Like the two

foregoing mechanisms set out in the Reform Act, taking judicial notice of a

company's SEC filings at the Rule 12(b)(6) stage furthers the purpose of

considering at the earliest feasible stage the "safe-harbor" protection afforded by

15 U.S.C. § 78u-5 as well as the "bespeaks caution" doctrine.

---

[11] 15 U.S.C. § 78u-5(e) provides:
> **Dispositive Motion**
> On any motion to dismiss based upon subsection (c)(1) of this section, the court shall consider any statement cited in the complaint and any cautionary statement accompanying the forward-looking statement, which are not subject to material dispute, cited by the defendant.

[12] 15 U.S.C. § 78u-4(b)(3)(B) provides:
> **Stay of Discovery**
> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

We do not believe that permitting judicial notice in this manner is inconsistent with Rule 12(b)(6). The prohibition against going outside of the facts alleged in the complaint protects against a party being caught by surprise when documents outside the pleadings are presented at that early stage. However in the instant case, as in the typical securities fraud case, Plaintiffs were well aware of the SEC filings. Indeed, Plaintiffs expressly state in their Amended Complaint that their allegations are "based upon the investigation of their counsel, which included a review of Apple South's SEC filings." Complaint ¶ 126. Moreover, when Defendants attached the SEC documents to their Motion to Dismiss, Plaintiffs moved to strike the SEC documents. In other words, Plaintiffs had ample notice and opportunity to challenge the propriety of considering the SEC documents at this stage of the litigation. Indeed, Fed. R. Evid. 201(e) assures such an opportunity to be heard with respect to the propriety of taking judicial notice.[13]

Allowing consideration of relevant SEC filings is also consonant with common notions of fairness. We have already noted the ample opportunity to challenge the propriety of taking judicial notice. As the Second Circuit noted in

---

[13] Fed. R. Evid. 201(e) provides:
> **Opportunity to be heard.**
> A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

17

Kramer, preventing courts from considering the entirety of a company's relevant SEC filings would allow plaintiffs who have done no more than pull snippets from the documents out of context to survive a motion to dismiss, notwithstanding the fact that dismissal would have been appropriate if the statements had been read in context. Kramer, 937 F.2d at 774.

Finally, we are persuaded that the case law of this Circuit does not foreclose the result we reach today. The district court relied on Ware v. Associated Milk Producers, Inc., 614 F.2d 413 (5th Cir. 1980), and its progeny, in refusing to consider the SEC filings proffered by Defendants. The court in Ware, citing and quoting from 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 at 675 (2d ed. 1990) stated that "the conversion of a Rule 12(b)(6) motion to a summary judgment takes place 'whenever matters outside the pleading are presented to and accepted by the court.'" Ware, 614 F.2d at 414. Concluding that it was bound by this language, the district court refused to consider the SEC records offered by Defendants in connection with their Motion to Dismiss. See Bryant, 25 F.Supp.2d at 1376-77.

We find Ware distinguishable. Ware did not address the concept of taking judicial notice of SEC public records at the 12(b)(6) stage, but instead dealt with affidavits attached to a motion to dismiss, clearly the sort of evidentiary material

that is not appropriate at the 12(b)(6) stage.  We also note that the treatise relied on by the Ware court, Wright & Miller's Federal Practice and Procedure, also states with respect to the adjudication of 12(b)(6) motions that: "[i]n determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record . . .  may be taken into account."  5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, (2d ed. 1990).  Several courts have employed this rationale and have expressly reviewed matters of public record in ruling on motions to dismiss and have expressly relied on the information contained in those records as a basis for their rulings. See Henson v. CSC Credit Servs, Inc., 29 F.3d 280, 284 (7th Cir. 1994); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).  Indeed, as indicated earlier, in securities fraud cases, numerous courts have treated SEC documents as public records capable of being judicially noticed at the motion to dismiss stage.  See Lovelace, 78 F.3d 1015, 1018 (5th Cir. 1996); Menowitz v. Brown, 991 F.2d 36, 39 (2d Cir. 1993) Kramer, 937 F.2d at 774 (2d Cir. 1991); In re FAC Realty Sec. Litig., 990 F.Supp. 416, 420 (E.D.N.C. 1997); J/H Real Estate Inc. v. Abramson, 901 F.Supp. 952, 955 (E.D. Pa. 1995); Ferber v. Travelers Corp., 802 F.Supp. 698, 701 (D. Conn. 1992).  Given this body of precedent permitting public records and especially public SEC records to be considered at the motion to dismiss stage

19

without requiring an automatic conversion to the summary judgment stage, we are confident that our ruling today does not run afoul of Ware or its stated allegiance to Rule 12(b).

A closer case is Kennedy v. Tallant, 710 F.2d 711 (11th Cir. 1983), in which this Court commented in a footnote that certain stock prospectuses at issue there were outside the pleadings and not properly considered on a motion to dismiss. See id. at 718 n.6. We are persuaded, however, that the Kennedy footnote does not prevent courts in this Circuit from judicially noticing relevant public records on file with the SEC, because the judicial notice concept was apparently not argued to the Kennedy panel.[14] See Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 149 (1925)(noting that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents").

For the foregoing reasons, we hold that the district court was authorized at the motion to dismiss stage to take judicial notice of relevant public documents

---

[14] Our research indicates that the Kramer decision from the Second Circuit, 937 F.2d at 774, was the first reported case to employ judicial notice under Fed. R. Evid. 201(b) in order to consider SEC filings at the motion to dismiss stage without converting the motion into one for summary judgment. Kramer was decided in 1991, whereas Kennedy was decided in 1983, making it unlikely that judicially noticing the prospectuses in Kennedy was within the perceived realm of possibilities when the case was argued and decided.

20

required to be filed with the SEC, and actually filed, for the purpose of determining

what statements the documents contain.[15]  To this extent, the district court erred in

striking certain documents that were attached to Defendants' motion to dismiss,[16]

_____

[15] Again, our holding today does not mean that the proffered SEC documents should be judicially noticed in order to prove the truth of those documents' contents.  If either of the parties seek to rely on the truth of the documents' contents, that party must present the issue to the district court.  We offer no opinion, however, on whether the SEC documents in this case should be judicially noticed for the truth of the matters contained in those documents.  See note 10, supra.

[16] Other courts have allowed authentic documents, whether or not filed with the SEC, to be considered on a motion to dismiss if they are referred to in the plaintiff's complaint and are central, or integral, to his claim.  See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994); Cortec Indus., Inc., 949 F.2d at 47-48 (2d Cir. 1991); see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3rd Cir. 1993); Romani v. Shearson Lehman Hutton Co., 929 F.2d 875, 879 n.3 (1st Cir. 1991). The Ninth Circuit calls this practice the incorporation by reference doctrine.  See In re Silicon Graphics Inc. Sec. Litig., Nos. 97-16204, 97-16240, – F.3d – (9th Cir. Aug. 4, 1999)(citing Branch, 14 F.3d at 454).  In expressly approving of the doctrine in Branch, the Ninth Circuit, quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Civil 2d § 1327, at 762-63, (2d ed. 1990), stated that "'when [the] plaintiff fails to introduce a pertinent document as part of his pleading, [the] defendant may introduce the exhibit as part of his motion attacking the pleading."  Branch, 14 F.3d at 454.  Fed. R. Civ. P. 10(c) is the purported foundation for the defendant's ability to force the court to consider the attachments at the motion to dismiss stage, because pursuant to 10(c), "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."  Thus, the rationale is that when a plaintiff files a complaint based on a document but fails to attach that document to the complaint, the defendant may so attach the document, and therefore, the document, as one that could have or rather in fairness should have been attached to the complaint, is considered part of the pleadings and thus may be reviewed at the pleading stage without converting the motion into one for summary judgment.  In short, the theory is that such a document is not "outside the pleadings," and thus it may be considered at the 12(b)(6) stage without a transformation into the summary judgment posture, as Rule 12(b) only requires conversion when documents "outside the pleadings" are considered.  Therefore, if a document is deemed so central to the claim so as not to be "outside the pleadings," then it may be considered on a motion to dismiss without giving the other the 10-day notice that is necessary when

21

and on remand, shall consider same in a manner not inconsistent with this opinion.[17]

B. Scienter

We turn to the second issue addressed in this opinion – what standard Plaintiffs must meet in order to plead scienter adequately under 15 U.S.C. § 78u-4(b)(2) in this Circuit. Plaintiffs in the instant case bring suit under § 10(b) of the Exchange Act, making it unlawful for any person "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe," 15 U.S.C. § 78j(b), and Rule 10b-5, making it unlawful

matters outside the pleadings are considered. The underlying premise of the doctrine seems to be that if the document was indeed so central to the claim that it served as a basis for the complaint, then plaintiffs must have already been aware of it, and thus do not need the protection of the 10-day notice period. We decline to address this doctrine in the instant case because Defendants conceded at oral argument that they were not relying on this doctrine in this appeal; rather, Defendants seek only consideration of the SEC documents pursuant to the judicial notice concept specified by Fed. R. Evid. 201(b). But see 15 U.S.C. § 78u-5(e) (providing for consideration of cautionary statements at the motion to dismiss stage under particular circumstances). See also Harris v. Ivax Corp., 11th Cir., 1999, __ F.3d __ (No. 98-4818, July 27, 1999), where a recent panel of this court apparently employed this doctrine in the securities litigation context.

[17] As noted above, see note 4, supra, we address only two discrete issues in this interlocutory appeal. Thus, we do not address issues such as the application of the "safe-harbor" protection afforded by 15 U.S.C. § 78u-5 for forward-looking statements or the "bespeaks caution" doctrine, preferring that they be addressed in the first instance by the district court.

22

"[t]o make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading," 17 C.F.R. § 240.10b-5. To allege securities fraud under Rule 10b-5, a plaintiff must show: 1) a misstatement or omission, 2) of a material fact, 3) made with scienter, 4) on which plaintiff relied, (5) that proximately caused his injury. See Ross v. Bank South, N.A., 885 F.2d 723, 728 (11th Cir. 1989)(en banc). In the instant appeal, we address the scienter requirement after the passage of the Reform Act to sustain a private claim under § 10(b) and Rule 10b-5 in this Circuit.

In Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194 n.12, 96 S.Ct. 1375, 1381 n.12 (1976), the Supreme Court, in holding that negligence was insufficient to trigger civil liability under § 10(b) and Rule 10b-5, defined scienter as a "mental state embracing intent to deceive, manipulate, or defraud." The court, however, in clearly precluding civil liability for negligence, expressly left open the question of whether scienter included recklessness. The Court stated in footnote 12:

> In certain areas of the law recklessness is considered to be a form of intentional conduct for purposes of imposing liability for some act. We need not address here the question whether, in some circumstances, reckless behavior is sufficient for civil liability under § 10(b) and Rule 10b-5.

Id. Since the reservation of that question and before the passage of the Reform

Act, every circuit to address the issue had held that recklessness can serve as an actionable state of mind under § 10(b) and Rule 10b-5, including our own. See McDonald v. Alan Bush Brokerage Co., 863 F.2d 809, 814 (11th Cir. 1989). In particular, our Circuit adheres to the rule that a showing of "severe recklessness" satisfies the scienter requirement.[18] Id. While all the circuits agreed that recklessness could suffice as the requisite scienter under § 10(b) and Rule 10b-5, as of the time of the Reform Act, the circuits were split as to what facts alleging scienter a plaintiff must plead in order to survive a motion to dismiss. Interpreting Fed. R. Civ. P. 9(b), which provides that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity," but also that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally," the Second and the Ninth Circuits had reached distinctly different results. The Second Circuit held that in securities fraud cases, plaintiffs

---

[18] McDonald characterizes "severe recklessness" as follows:

'Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.'

Id. at 814 (quoting Broad v. Rockwell International Corp., 642 F.2d F.2d 961-62 (5th Cir. 1981)(en banc) (citation omitted)).

24

must allege specific facts giving rise to a "strong inference" that the defendants acted with the requisite scienter. See Connecticut Nat' l Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir. 1987). The Ninth Circuit, on the other hand, concluded that Fed. R. Civ. P. 9(b) permitted plaintiffs to aver scienter generally, and thus no specific facts needed to be set forth in the complaint to support that allegation. See In re Glenfed, Inc. Sec. Litig., 42 F.3d 1541, 1545 (9th Cir. 1994)(en banc). This split between the circuits was addressed and resolved by the Reform Act. Section 78u-4(b)(2) expressly requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." (Emphasis added).

Although it is clear after the Reform Act that scienter can no longer be averred generally, two other questions remain: (1) are well-pled allegations of recklessness sufficient to allege scienter, or, in other words, what qualifies as the "required state of mind" under § 78u-4(b)(2); and (2) are allegations of motive and opportunity to commit fraud sufficient, as they are in the Second Circuit, or did § 78u-4(b)(2) merely borrow the Second Circuit's "strong inference" language without adopting its motive and opportunity test?

Since the time of the order appealed from in the instant case, four of our sister circuits, the Second, the Third, the Sixth, and the Ninth, have issued opinions

25

interpreting the Reform Act and specifically addressing its scienter standard.[19] <u>See</u> <u>In re Comshare Sec. Litig.</u>, No. 97-2098, – F.3d –, (6th Cir. July 8, 1999); <u>In re Silicon Graphics Sec. Litig.</u>, Nos. 97-16204, 97-1620, – F.3d – (9th Cir. Aug. 4, 1999); <u>In re Advanta Corp. Sec. Litig.</u>, No. 98-1846, – F.3d – (3rd Cir. June 17, 1999); <u>Press v. Chemical Inv. Servs. Corp.</u>, 166 F.3d 529, 538 (2d Cir. 1999). The Ninth Circuit reached the conclusion closest to that urged by the Defendants in the instant appeal -- namely that the Reform Act substantively raised the required level of scienter, that allegations showing motive and opportunity to commit fraud are not sufficient to allege the necessary state of mind under the Reform Act, and that conscious recklessness is required to raise a strong inference of scienter under the Reform Act. <u>See In re Silicon Graphics</u>, -- F.3d --. On the other hand, the Second and Third Circuits reached the same conclusion as the district court below and that Plaintiffs and the SEC, as <u>amicus curiae</u>, urge us to affirm on appeal – i.e., that a strong inference of scienter can be alleged by showing a motive and opportunity to commit fraud or by showing circumstantial evidence denoting either recklessness or conscious misbehavior. <u>See In re Advanta Corp. Sec. Litig.</u>, -- F.3d –; <u>Press</u>,

---

[19] In <u>Harris v. Ivax Corp.</u>, 11th Cir., 1999, __ F.3d __ (No. 98-4818, July 27, 1999), we acknowledged this issue and the split of authority on it, but did not need to address it because the case could be satisfactorily resolved on other grounds.

166 F.3d at 537-38.[20] The Sixth Circuit has taken a middle course, holding that scienter could be alleged by pleading facts that give rise to a strong inference of recklessness, but refusing to accept the proposition that allegations of motive and opportunity to commit fraud were sufficient to plead scienter, unless the facts demonstrate the required state of mind, namely that the defendant acted recklessly or knowingly. See In re Comshare Sec. Litig., -- F.3d –. As indicated in the discussion below, we are in basic agreement with the Sixth Circuit; we hold that the Reform Act does not prohibit the practice of alleging scienter by pleading facts that denote severe recklessness, the standard previously approved of by this Circuit, see McDonald v. Alan Bush Brokerage Co., 863 F.2d 809, 814 (11th Cir. 1989); but we also hold that the Reform Act does not codify the "motive and opportunity" test formulated by the Second Circuit. We now turn to the first of the two above-mentioned questions, namely whether recklessness is still sufficient to allege scienter under the Reform Act.

---

[20] Two other Circuits, the First and the Fifth, have commented on the proper interpretation of the Reform Act in dicta. See Maldonaldo v. Dominguez, 137 F.3d 1, 9-10 (1st Cir. 1998); Williams v. WMX Tech., Inc., 112 F.3d 175, 178 (5th Cir. 1997). The First Circuit in Maldonaldo expressly declined "to review or adopt Second Circuit case law" on this issue, thereby refusing to approve of the Second Circuit's "motive and opportunity" test, as it was "unclear whether this test [was] compatible with [the First] [C]ircuit's 'especially rigorous' application of Rule 9(b) in the securities fraud context." Maldonaldo, 137 F.3d at 10 n.6. The Fifth Circuit in Williams, without mentioning scienter, noted that the Reform Act, though it did not apply in the case at hand, had adopted the same standard as the Second Circuit. Williams, 112 F.3d at 178.

### (i) Recklessness

The question is whether fact-specific allegations of recklessness still suffice under the Reform Act. As noted above, the circuits are not in harmony as to this question. The opinion of the Ninth Circuit in Silicon Graphics would seem to indicate that the Reform Act substantively raised the required level of scienter, while the Second, Third and Sixth Circuits hold that fact-specific allegations of recklessness are still sufficient. For the reasons stated below, we hold that a complaint alleging with particularity that a defendant acted with a severely reckless state of mind still suffices to state a claim for civil liability under § 10(b) and Rule 10b-5.

When interpreting a statute, we look to its plain language, resorting to legislative history in an attempt to discern congressional intent only when the language of the statute is unclear. See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc. 447 U.S. 102, 108, 100 S.Ct. 2051 (1980). In the instant case, the operative language of the Reform Act is that a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The "required state of mind" is not defined by the Reform Act. Thus, we are faced with the question of whether or not the above language statutory erased the well-established judicial rule that

28

scienter could be alleged adequately by pleading facts denoting reckless behavior. We hold that it did not.

Every circuit to address the question before the passage of the Reform Act held that a showing of recklessness was sufficient to allege scienter. See Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1569-70 (9th Cir. 1990); In re Phillips Petroleum Sec. Litig., 881 F.2d 1236, 1244 (3d Cir. 1989); Van Dyke v. Coburn Enter. Inc., 873 F.2d 1094, 1100 (8th Cir. 1989); McDonald, 863 F.2d at 814 (11th Cir. 1989); Hackbart v. Holmes, 675 F.2d 1114, 1117-18 (10th Cir. 1982); Broad v. Rockwell Int'l Corp., 642 F.2d 929, 961-62 (5th Cir. 1981)(en banc); Mansbach v. Prescott, Ball & Turben, 598 F.2d 1017, 1023-24 (6th Cir. 1979); Cook v. Avien, Inc. 573 F.2d 685, 692 (1st Cir. 1978); Rolf v. Byth Eastman Dillon & Co., 570 F.2d 38, 47 (2d Cir. 1978); Sundstrand Corp. v. Sun Chem. Corp., 553 F.2d 1033, 1044 (7th Cir. 1977). Congress was certainly aware of this well-established precedent when drafting the Reform Act. Indeed, when Congress codified "the required state of mind," it seems to us very clear that Congress was codifying the well-established law that recklessness was sufficient to allege scienter. See Cottage Savings Ass'n v. Commissioner, 499 U.S. 554, 561-62, 111 S.Ct. 1503, 1508-09 (1991) (noting that because decisions establishing particular legal doctrine were part of the "contemporary legal context" in which Congress had acted and

29

because Congress had left undisturbed the legal principle during subsequent reenactments, the Court would presume that Congress intended to codify it)(citations omitted).

This conclusion is confirmed by the fact that in another portion of the Reform Act, Congress expressly employs the "actual knowledge" standard for scienter. See 15 U.S.C. § 78u-5(c)(1)(B)(safe harbor does not apply to statements that plaintiff proves were made by the defendant with "actual knowledge" that they were false or misleading). Thus, had Congress wished to replace recklessness with actual knowledge with respect to the quantum of scienter required by § 78u-4(b)(2), it could have done so expressly, as it did with the statutory safe harbor provision mentioned above, 15 U.S.C. § 78u-5(c)(1)(B), instead of merely reciting that the "required state of mind" must be plead with particularity. As noted, at the time Congress drafted the Act, it was well-established that the "required state of mind" included some form of reckless behavior. If Congress desired to require some other state of mind, that is, other than the reckless state of mind then uniformly held sufficient by the federal courts, we believe that Congress would have done so in explicit terms.

While § 78u-4(b)(2) clearly clarifies the pleading requirements for alleging scienter, mandating that facts be stated "with particularity" showing a "strong

30

inference" of scienter, it does not substantively change the actionable level of scienter. Rather, it refers to the "required state of mind," which, at the time the Reform Act was drafted, had been clearly defined by the federal courts to encompass reckless behavior. We are persuaded that the plain text of the statute makes it clear that recklessness was not eliminated as a basis for liability under the Reform Act, and therefore resort to legislative history is unnecessary.[21]

(ii) Motive and Opportunity to Commit Fraud

_____

[21] To the extent that Silicon Graphics suggests that Congress intended in the Reform Act to raise the substantive state of mind requirement, we believe that the Ninth Circuit's opinion fails to adhere to the plain meaning of the statutory language. Rather than changing the substantive standard, the statute explicitly incorporated the existing standard; the statute refers to "the required state of mind." We are satisfied that Congress plainly intended to codify the well-established law that some form of recklessness was included within the required state of mind.

The form of recklessness recognized in the well-established case law at the time of passage of the Reform Act was a "stringent formulation of the term 'recklessness' that does not allow for recklessness as a form of negligence." Comshare, -- F.3d at –. As noted above, this Circuit had recognized "severe recklessness" as an actionable state of mind. See note 18, supra. The "severe recklessness" recognized by our Circuit, like the actionable level of scienter in most other circuits, was based on the Seventh Circuit's formulation of recklessness in Sundstrand Corp. v. Sun. Chem. Corp., 553 F.2d 1033, 1044 (7th Cir. 1977)(holding that recklessness amounted to "an extreme departure from the standards of ordinary care . . . present[ing] a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it").

To the extent that the effort in Silicon Graphics is an attempt to import into the law a new and uncertain super-recklessness, see -- F.3d at – ("deliberate or conscious recklessness"; "degree of recklessness that strongly suggests actual intent"), we believe that the attempt is inconsistent with the plain statutory language. Further, we doubt that the attempt would be worth the additional uncertainty that would be introduced.

31

Plaintiffs, and the SEC, as <u>amicus curiae</u>, argue that § 78u-4(b)(2)'s scienter standard not only retains liability for recklessness, as we have held above, but also codifies the Second Circuit's holding that scienter can be adequately pled: 1) by alleging facts constituting strong circumstantial evidence of recklessness or conscious misbehavior by the defendant; or 2) by alleging facts which show a motive and opportunity to commit fraud on the part of the defendant.  <u>See Shields</u>, 25 F.3d at 1128 (2d Cir. 1994).   The district court agreed with Plaintiffs, concluding that:

> Because Congress did not explicitly disapprove of the well-established, judicially-created rule [the Second Circuit pleading test], the Court finds that a plaintiff may satisfy the pleading requirements of a Securities fraud action with evidence of motive, opportunity, and recklessness.

<u>Bryant</u>, 25 F.Supp.2d at 1381 (footnote omitted).[22]  As noted above, the Third Circuit has also adopted the Second Circuit standard.  <u>See In re Advanta Corp. Secur. Litig.</u>, – F.3d –.

---

[22] We interpret the district court's formulation of the standard to require evidence of motive and opportunity or recklessness, rather than evidence of all three, as the above-quoted sentence from the court's order literally reads.  The parties both treat the district court order as adopting the standard in the disjunctive, that is, that either facts denoting motive and opportunity or recklessness will suffice to survive a motion to dismiss.  Because it is clear that the district court was adopting its standard based precisely on that of the Second Circuit, we will treat the order as having employed the Second Circuit test verbatim.

For the reasons that follow, we reject the notion that allegations of motive and opportunity to commit fraud, standing alone, are sufficient to establish scienter in this Circuit. In so holding, we are persuaded by the reasoning of the Sixth Circuit, and that of various district courts within our own Circuit. See In re Comshare Sec. Litig., -- F.3d –, No. 97-2098 (6th Cir. July 8, 1999); Carley Capital Group v. Deloitte & Touche, L.L.P., 27 F.Supp.2d 1325, 1339 (N.D. Ga. 1998); Malin v. IVAX Corp., 17 F.Supp.2d 1345, 1357 (S.D. Fla. 1998).

The Reform Act, or more specifically 15 U.S.C. § 78u-4(b)(2), governing the requisite scienter in actions filed pursuant to § 10(b) and Rule 10b-5, makes no express mention of the motive and opportunity test developed in the Second Circuit, and certainly does not expressly codify it. Instead, § 78u-4(b)(2) requires that a plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."

We interpret this language to mean that a plaintiff must plead with particularity facts which give rise to a strong inference that the defendant acted in a severely reckless fashion – "the required state of mind" in our Circuit for many years. See McDonald, 863 F.2d at 814 (collecting cases permitting allegations of recklessness to suffice for securities fraud liability). While allegations of motive and opportunity may be relevant to a showing of severe recklessness, we hold that

33

such allegations, without more, are not sufficient to demonstrate the requisite scienter in our Circuit. We quantify scienter as encompassing at least a showing of severe recklessness, and although motive and opportunity to commit fraud may under some circumstances contribute to an inference of severe recklessness, we decline to conclude that they, standing alone, are its equivalent. Our reading of the Reform Act's scienter requirement is supported by the plain meaning of the phrase "required state of mind." This language clearly refers to a substantive standard, a condition of the mind, like willfulness or recklessness. Motive and opportunity, on the other hand, do not constitute a substantive standard; rather, motive and opportunity are specific kinds of evidence, which along with other evidence might contribute to an inference of recklessness or willfulness. We conclude that the statutory language – "required state of mind" – plainly does not refer to motive and opportunity, because motive and opportunity do not constitute a state of mind. Thus, we conclude that the Reform Act did not codify the motive and opportunity analysis.

We agree with the rationale of Judge Thrash in rejecting the motive and opportunity test:

> The Eleventh Circuit has never adopted a scienter standard that follows the "motive and opportunity" analysis of the Second Circuit. A good argument can be

34

made that the "motive and opportunity" standard lowers the bar for securities fraud cases below that mandated by the Supreme Court in <u>Hochfelder</u>.  Greed is a ubiquitous motive, and corporate insiders and upper management always have opportunity to lie and manipulate.  Furthermore, allowing private securities class actions to proceed to discovery upon bare allegations of motive and opportunity would upset the delicate balance of providing a remedy for genuine fraud while preventing abusive strike suits that the Reform Act sought to achieve.  Motive and opportunity will ordinarily be relevant, and often highly relevant . . . [but] a showing of motive and opportunity standing alone [is] insufficient to allege securities fraud under the "severe recklessness" standard established by the Eleventh Circuit.

<u>Carley Capital Group</u>, 27 F.Supp.2d at 1339.  Thus, because the clear purpose of the Reform Act was to curb abusive securities litigation, and because we believe that the motive and opportunity analysis is inconsistent with that purpose, we decline to adopt it.

Moreover, unlike the well-established and uniformly recognized precedent holding that recklessness was an actionable state of mind under Rule 10b-5, the motive and opportunity analysis was not well-established throughout the circuits at the time that the Reform Act was passed.  Indeed, our research indicates that the motive and opportunity test has never been utilized  by our Circuit in the Rule 10b-5 context.  Our research shows that only the Second and Ninth Circuits employed the motive and opportunity analysis before the passage of the Reform Act.  <u>See,</u>

35

e.g., In re Wells Fargo Sec. Litig., 12 F.3d 922, 931 (9th Cir. 1993);  In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 270 (2d Cir. 1993).  Moreover, even within the Second Circuit, the wellspring of the analysis, the status of the motive and opportunity test was somewhat uncertain, having been applied in a seemingly inconsistent fashion. Compare Time Warner, 9 F.3d at 259, with Shields, 25 F.3d at 1128.  Thus, at the time the Reform Act was enacted, the motive and opportunity analysis was certainly not so well-established that it was codified sub silentio. While we are persuaded that the Reform Act, by referring to the "required state of mind," meant to codify recklessness as an actionable level of scienter, as recklessness was then uniformly recognized to be by the circuits, we conclude that it did not intend to codify the lesser-known, lesser-accepted, and certainly not well-established notion that allegations of motive and opportunity to commit fraud are sufficient to show scienter.  Accordingly, we refuse to import it into our case law, as heretofore it had not sufficed.

CONCLUSION

We conclude that in the Eleventh Circuit, a securities fraud plaintiff must plead scienter with particular facts that give rise to a strong inference that the defendant acted in a severely reckless manner.  We reject Plaintiffs' invitation to

adopt the Second Circuit's motive and opportunity analysis; we hold that a showing of mere motive and opportunity is insufficient to plead scienter.  We also hold that in ruling on the propriety of such a 12(b)(6) dismissal, a court may take judicial notice of relevant, publicly-filed SEC documents for the purpose of determining what statements those documents contained.

Having thus set out the law, both as to the pleading of scienter under the Reform Act in this Circuit, and as to the judicial notice of SEC documents at the motion to dismiss stage, we remand the case to the district court for proceedings consistent with this opinion.[23]


**VACATED AND REMANDED.**

---

[23] Plaintiffs' Motion to Strike Defendants' Reply Brief is denied as moot.  We do not address the merits of the issue with respect to which the challenged attachments to the Reply Brief would be relevant, and therefore Plaintiffs' motion is moot at this stage.

COOK, Senior District Judge, concurring in part and dissenting in part:

I concur with the majority's holding that, pursuant to the judicial notice provision in Fed. R. Evid. 201, company disclosure documents publicly filed with the Securities and Exchange Commission (SEC) may be considered on a Fed. R. Civ. P. 12(b)(6) motion to dismiss. I also concur with the majority on the fundamental issue presented by this appeal, namely that allegations of recklessness continue to meet the scienter requirement under Section 10(b)[24] and Rule 10b-5 securities actions after the advent of the PSLRA.

However, I dissent on the last issue the majority addresses because I would not reach the question of whether motive and recklessness satisfies the scienter factor since I believe our recklessness holding is sufficient to dispose of this appeal.

---

[24]15 U.S.C. § 78j(b).