Steven J. SEGURA, Plaintiff,

v.

**HUNTER DOUGLAS FABRICATION COMPANY, Defendant.**

No. 8:01–CV–2346–T–30TGW.

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 4, 2002.

Craig L. Berman, Berman Law Firm, P.A., Bankers Financial Center, St. Petersburg, FL, for Steven J. Segura, plaintiff.

John W. Campbell, Michael Dennis Malfitano, Angelique Groza Lyons, Constangy, Brooks & Smith, LLC, Tampa, FL, for Hunter Douglas Fabrication Company, defendant.

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS

MOODY, District Judge.

This cause is before the Court upon Defendant's Motion to Dismiss (Dkt.# 4). Having reviewed the Motion, response, supporting and opposing memoranda, and being otherwise advised of the premises, the Court finds the Motion to Dismiss should be denied.

Plaintiff in this action brings claims under Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA"), the

Florida Civil Rights Act, §§ 760.06–760.11. *Fla.Stat.* ("FCRA"), and the Family and Medical Leave Act, 29 U.S.C. § 2601 ("FMLA"). In Count I of the complaint, Plaintiff alleges he was discriminated against on the basis of disability in violation of the ADA and FCRA. Plaintiff alleges he jointly filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and with the Florida Commission on Human Relations ("FCHR"). Defendant moves to dismiss Plaintiff's FCRA claim for failure to timely request an administrative hearing as required by the FCRA.

■ The FCHR and the EEOC have established a "work sharing" agreement[1] by which the two agencies need not undertake two independent investigations of a claim. If a claim is jointly filed with the FCHR and the EEOC, the investigation of the Plaintiff's claims may be investigated by only one agency. The record does not reflect that the FCHR made any determination regarding Plaintiff's Complaint. It is the decision of the EEOC under the joint filing arrangement on which the Defendant bases his Motion to Dismiss.

To make a claim under the FCRA, a plaintiff must file a charge of discrimination with the FCHR. *See* § 760.11(1) *Fla. Stat.* (2001). According to the work sharing agreement and the Administrative Code, the charge may be filed with the FCHR or with the EEOC which has been designated as the agent of the FCHR for the purposes of filing. *See* Fla.Admin.Code Ann.R. 60Y–5.001(1) (2001) and work sharing agreement between FCHR and EEOC for the year 2001, Section IIA.

Once a charge is filed, the Florida Legislature contemplated that the FCHR would, within 180 days, determine whether or not there was reasonable cause to believe that a discriminatory practice had occurred. The relevant portion of the FCRA, found at § 760.11, Fla.Stat., provides:

(3) Except as provided in subsection (2), the commission shall investigate the allegations in the complaint. Within 180 days of the filing of the complaint, the commission shall determine if there is reasonable cause to believe that discriminatory practice has occurred in violation of the Florida Civil Rights Act of 1992. When the commission determines whether or not there is reasonable cause, the commission by registered mail shall promptly notify the aggrieved person and the respondent of the reasonable cause determination, the date of such determination, and the options available under this section.

(4) In the event that the commission determines that there is reasonable cause to believe that a discriminatory practice has occurred in violation of the Florida Civil Rights Act of 1992, the aggrieved person may either:

(a) Bring a civil action against the person named in the complaint in any court of competent jurisdiction; or

(b) Request an administrative hearing under §§ 120.569 and 120.57.

The election by the aggrieved person of filing a civil action or requesting an administrative hearing under this subsection is the exclusive procedure available to the aggrieved person pursuant to this act.

\* \* \* \* \* \*

(7) If the commission determines that there is not reasonable cause to believe that a violation of the Florida Civil

---

1. A copy of the work sharing agreement in effect in 2001, the relevant time period, is judicially noticed pursuant to F.R.E. 201 and attached to this opinion. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th Cir.1999).

Rights Act of 1992 has occurred, the commission shall dismiss the complaint. The aggrieved person may request an administrative hearing under §§ 120.569 and 120.57, but any such request must be made within 35 days of the date of determination of reasonable cause and any such hearing shall be heard by an administrative law judge and not by the commission or a commissioner. If the aggrieved person does not request an administrative hearing within the 35 days, the claim will be barred. If the administrative law judge finds that a violation of the Florida Civil Rights Act of 1992 has occurred, he or she shall issue an appropriate recommended order to the commission prohibiting the practice and recommending affirmative relief from the effects of the practice, including back pay. Within 90 days of the date the recommended order is rendered, the commission shall issue a final order by adopting, rejecting, or modifying the recommended order as provided under §§ 120.569 and 120.57. The 90-day period may be extended with the consent of all the parties. In any action or proceeding under this subsection, the commission, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs. It is the intent of the Legislature that this provision for attorney's fees be interpreted in a manner consistent with federal case law involving a Title VII action. In the event the final order issued by the commission determines that a violation of the Florida Civil Rights Act of 1992 has occurred, the aggrieved person may bring, within 1 year of the date of the final order, a civil action under subsection (5) as if there has been a reasonable

cause determination or accept the affirmative relief offered by the commission, but not both.

(8) In the event that the commission fails to conciliate or determine whether there is reasonable cause on any complaint under this section within 180 days of the filing of the complaint, an aggrieved person may proceed under subsection (4), as if the commission determined that there was reasonable cause.

The case before the Court raises two issues which have been causing courts considerable problems since the work sharing agreement between the FCHR and the EEOC was instituted. The first is whether a determination by the EEOC constitutes a determination by the FCHR and, if so, which statutory procedures are triggered by that determination.

As to the first issue, courts in some earlier cases have concluded that a complaint dual-filed with the EEOC was not sufficient to constitute filing with the FCHR. *See Weaver v. Florida Power and Light,* 1996 WL 479117 (S.D.Fla.1996), *aff'd,* 124 F.3d 221 (11th Cir.1997); *Thompson v. Nassau County Department of Transportation,* 1999 WL 1427715 (M.D.Fla.1999). Since those cases, the wording of the work sharing agreement has been changed.[2]

■ At the time of the filing of the complaint in the case at bar, the work sharing agreement specifically provided that the EEOC was the agent of the FCHR for the purpose of both receiving "and filing charges." (Section IIA of the work sharing agreement.) The agreement further provides that once an agency begins an investigation, it normally will resolve the charge. (Section IIC of the work

---

**2.** *Weaver* concerned a claim under the 1994 work sharing agreement. That document did not specifically provide that the EEOC was the agent of the FCHR for the filing of the charge and was unclear on whether the

EEOC determination was intended to also be the FCHR determination. *See* 1994 work sharing agreement attached to this Order. The Court takes judicial notice of this document. *See* n. 1 *infra.*

sharing agreement.) But, the agreement provides that the EEOC determination is not the FCHR determination. Section IIG of the work sharing agreement states:

> The EEOC agrees to provide the FEPA with notice of its final actions on all dual-filed charges. The FEPA agrees to timly (sic) issue its final action and Notice of Right to Sue, as appropriate, upon receipt of each of EEOC's acceptable final action notices.

While it has not yet released its opinion for publication (and perhaps is still considering its opinion before making it final), the Second District has concluded that language in the work sharing agreement makes it clear that a determination by the EEOC is not a determination by the FCHR. *Jones v. Lakeland Regional Med. Ctr.*, 2001 WL 1386595 (Fla. 2d DCA Nov.9, 2001). This Court reaches the same conclusion. Since the EEOC determination is a not a determination by the FCHR, Plaintiff is not required to file for an administrative hearing within thirty-five days of the EEOC letter as a prerequisite to this lawsuit and Defendant's Motion to Dismiss should be denied on this ground.

While the Court's conclusion that an EEOC determination is not equivalent to an FCHR determination, it will nevertheless address the second issue which provides further support for the Court's conclusion. That is, if the EEOC determination is construed as a final determination by the FCHR, then what procedural requirements are invoked under the Florida statutory scheme? Much of the confusion on this issue stems from the wording of the EEOC form which was not designed to fit neatly within

only one of the three categories of determinations under the FCRA: (1) § 760.11(4)—reasonable cause (referred to by some as a "cause" finding), (2) § 760.11(7)—not reasonable cause (referred to by some as a "no cause" finding), and (3) § 760.11(8)—a failure to determine whether or not there is reasonable cause within 180 days of the filing of the complaint (which this Court will refer to as the "failed to determine" category).

The EEOC's form has ten different boxes which may be checked as reasons for a dismissal. In the case at bar, the EEOC issued Plaintiff a "Dismissal and Notice of Rights" letter which gave the "unable to conclude"[3] reason for the dismissal. (Dkt.4, Exh. 2). Many courts have struggled to fit this wording into the FCRA. The "unable to conclude" reason states:

> The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

Defendant argues that this determination by the EEOC is a "no cause" determination, that would require the charging party under FCRA to request an administrative hearing within thirty-five days. It is undisputed that, in the instant case, Plaintiff did not request the administrative hearing. Instead, upon receipt of the EEOC's determination, the Plaintiff apparently[4] waited for the 180 days to expire

---

3. This is the eighth box on the EEOC "Dismissal and Notice of Rights" form. This Court will refer to this language as the "unable to conclude" reason.

4. The Court uses the word "apparently" here because the dual filing date of the complaint

with the EEOC is unclear on the Court's copy and the Complaint fails to allege the date. And, Defendant's Motion to Dismiss did not challenge Plaintiff's right to bring this action for not waiting 180 days before filing.

and then filed the present action. Plaintiff contends that the "unable to conclude" reason fits within § 760.11(8)—the "failed to determine" category, which allows suit to be filed after the expiration of 180 days without first requesting an administrative hearing.

The Court first looks to state law to resolve this issue. It is well established that, when exercising jurisdiction over a party's state law claims, a federal court should apply the law of the state. *See Erie R. Co. v. Tompkins* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). A federal court should not substitute its own interpretation of state law for that which exists within the body of state law. *Id.* Unfortunately, a conflict currently exists between the Second and Third District Courts of Appeal in Florida regarding whether the "unable to conclude" finding by the EEOC is a "no cause" finding within the wording of § 760.11(7), *Fla.Stat. See Cisko v. Phoenix Medical Products, Inc.* 797 So.2d 11 (Fla. 2d DCA 2001); *Woodham v. Blue Cross and Blue Shield of Fla.*, 793 So.2d 41 (Fla. 3d DCA 2001). This conflict has been certified in *Woodham* to the Supreme Court of Florida.

The facts of both *Cisko* and *Woodham* are sufficiently close to the case at bar as to be controlling were there not a conflict. This conflict is the result of differing statutory interpretations—the Third District Court of Appeal finds the wording of the statute to be clear that the "unable to conclude" reason falls within the "no cause" category, while the Second District Court of Appeal finds the "unable to conclude" reason to be confusing and not within the "no cause" category. Specifically, the Second District concluded that it could "reasonably be interpreted as indicating that the EEOC did not have sufficient information from which to make a determination." *Cisko*, 797 So.2d at 13.

A review of the statute reveals a legislative scheme that requires the FCHR to, within 180 days, make a determination "if there is reasonable cause to believe that discriminatory practice has occurred." The legislature envisioned three possible outcomes from a filed charge: 1) a finding of reasonable cause, 2) a finding that no reasonable cause existed, or 3) the FCHR failed to make a determination within 180 days. Problematically, by employing a technical use of the English language, the second category is broader than intended and includes all possible outcomes other than a reasonable cause finding. The Florida Legislature used "reasonable cause" to describe the first category and "not reasonable cause" to describe the second category. "Not reasonable cause" is the negative of "reasonable cause." That is, "not reasonable cause" is every response other than a finding of reasonable cause.[5]

Other responses on the EEOC form would also come within the "not reasonable cause" category such as "you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it is not possible to resolve your charge" (box 5 on the EEOC form), and "while reasonable efforts were made to locate you, we were not able to do so" (box 6 on the EEOC form), and the "unable to conclude" response (box 8 on the EEOC form). But, these responses, other than a specific finding of "no reasonable cause," also fit within the third category, the

---

**5.** In mathematical terms, "reasonable cause" is a subset of possible determinations by the FCHR while "not reasonable cause" is another subset, one including all responses other than a "reasonable cause" determination. "No reasonable cause" is one response among others that comes within "not reasonable cause."

"failed to determine" category. Therein lies the problem.

■ The EEOC's statement that it is "unable to conclude that the information obtained establishes violations of the statutes" can reasonably be interpreted to be a failure to "determine whether there is reasonable cause on" the complaint under § 760.11(8). Accordingly, this Court concludes that the "unable to conclude" language used by the EEOC falls within both the "not reasonable cause" category (§ 760.11(7)) as well as the "failed to determine" category (§ 760.11(8)) of the FCRA. Since it falls under both categories, the one that provides the more permissive procedural requirements in favor of Plaintiff is to be applied, according to the FCRA. § 760.01(3) *Fla.Stat.* (2001). The more permissive category is the "failed to determine" category which does not require an administrative hearing prior to suit being filed. Therefore, the Motion to Dismiss should be denied on this ground as well.

Having concluded that the Motion to Dismiss should be denied on both grounds, it is hereby **ORDERED** and **ADJUDGED** that Defendant's Motion to Dismiss (Dkt.# 4) is hereby **DENIED.**

**DONE** and **ORDERED** in Tampa, Florida on this 1st day of February, 2002.

WORKSHARING AGREEMENT

BETWEEN

The Florida Commission
of Human Relations

and the

EQUAL EMPLOYMENT
OPPORTUNITY
COMMISSION

FOR FISCAL YEAR 1994

I. INTRODUCTION

A. The Florida Commission of Human Relations, hereinafter referred to as the FEPA, has jurisdiction over allegations of employment discrimination filed against employers of fifteen (15) or more employees occurring within the State of Florida based on race, color, religion, sex, national origin, age, handicap or marital status pursuant to the Florida Civil Rights Act of 1992, as amended (Sections 760.01–760.11, Florida Statutes).

The Equal Employment Opportunity Commission, hereinafter referred to as EEOC, has jurisdiction over allegations of employment discrimination occurring throughout the United States where such charges are based on race, color, religion, sex, or national origin, all pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000(e)) (hereinafter referred to as Title VII). EEOC has jurisdiction to investigate and determine charges of discrimination based on age (40 or older) under the Age Discrimination in Employment Act (ADEA) of 1967, as amended (29 U.S.C. § 621 et. seq.), for unequal wages based on sex under the Equal Pay Act of 1963 (29 U.S.C. § 206), and over allegations of employment discrimination based on disability pursuant to Title I of the Americans with Disabilities Act of 1991,(42 U.S.C. § 12101).

B. In recognition of, and to the extent of the common jurisdiction and goals of the two (2) Agencies, and in consideration of the mutual promises and covenants contained herein, the FEPA and the EEOC hereby agree to the terms of this Worksharing Agreement, which is designed to provide individuals with an efficient procedure for obtaining redress for their grievances under appropriate state or Federal laws.

## II. FILING OF CHARGES OF DISCRIMINATION

A. In order to facilitate the filing of charges of employment discrimination, the EEOC and the FEPA each designate the other as its agent for the purpose of receiving and drafting charges.

B. The FEPA shall take all charges alleging a violation of Title VII, ADEA, EPA, or the ADA where the parties have mutual jurisdiction and refer them to the EEOC for dual filing, so long as the allegations meet the minimum requirements of those Acts.

C. Each Agency will inform individuals of their rights to file charges with the other Agency and or assist any person alleging employment discrimination to draft a charge in a manner which will satisfy the requirements of both agencies to the extent of their common jurisdiction. As part of the intake duties, investigators are to verify with the charging parties if they have filed a charge of discrimination with other agencies prior to filing the charge.

D. For charges that are to be dual-filed, each Agency will use EEOC Charge Form 5 (or alternatively, an employment discrimination charge form which within statutory limitations, is acceptable in form and content to EEOC and the FEPA) to draft charges. When a charge is taken based on disability, the nature of the disability shall *not* be disclosed on the face of the charge.

E. Each Agency will make every effort to forward all dual filed charges to the other Agency within two working days of receipt. The Agency which initially takes the charge will provide notice of the charge to the Respondent within ten calendar days of receipt. Each agency will use EEOC form 212–A, Charge Transmittal, to transmit charges to each other.

F. Each Agency will also forward all other relevant data obtained at time of intake. Specifically, each agency will forward an Affidavit taken at the time of intake and a copy of the Charge Information form.

G. Each Agency agrees that it will notify both the Charging Party and Respondent of the dual-filed nature of each such charge it receives for initial processing and explain the rights and responsibilities of the parties under the applicable Federal, State, or Local statutes.

H. The delegation of authority to receive charges contained in Paragraph II. a. does not include the right of one Agency to determine the jurisdiction of the other Agency over a charge.

## III. DIVISION OF INITIAL CHARGE–PROCESSING RESPONSIBILITIES

In recognition of the statutory authority granted to the FEPA by Section 706(c) and 706(d) of Title VII as amended; and by Title I of the Americans with Disabilities Act, and the transmittal of charges of age discrimination pursuant to the Age Discrimination in Employment Act of 1967, the primary responsibility for resolving dual-filed charges between the FEPA and the EEOC will be divided as follows:

A. EEOC and the FEPA will process all Title VII, ADA, and ADEA charges that they originally receive with the following exceptions:

1. EEOC will initially process and the FEPA hereby waives its right to initially process:

—All Title VII charges received by the FEPA 240 days or more after the date of violation;

—Concurrent Title VII/EPA charges;

—All charges against the FEPA or its parent organization where such parent organization exercises direct or indirect control over the charge decision making process;

—All charges filed by EEOC Commissioners;

—Charges also covered by the Immigration Reform and Control Act;

—Complaints referred to EEOC by the Department of Justice, Office of Federal Contract Compliance, or Federal fund-granting agencies under 29 CFR § 1640, 1641, and 1691 and class complaints retained by these agencies for action;

—Any charge where EEOC is a party to a Conciliation Agreement or a Consent Decree which, upon mutual consultation and agreement, is relevant to the disposition of the charge. The EEOC will notify the FEPA of all Conciliation Agreements and Consent Decrees which have features relevant to the disposition of subsequent charges;

—Any charge alleging retaliation for filing a charge with EEOC or for cooperating with EEOC; and

—All charges against Respondents which are designated for initial processing by the EEOC in a supplementary memorandum to this Agreement.

2. The FEPA will process:

—Any charge alleging retaliation for filing a charge with the FEPA or cooperating with the FEPA;

—Any charge where the FEPA is a party to a Conciliation Agreement or a Consent Decree which, upon mutual consultation and agreement, is relevant to the disposition of the charge. The FEPA will provide the

EEOC with an on-going list of all Conciliation Agreements and Consent Decrees which have features relevant to the disposition of subsequent charges;

—All charges which allege more than one basis of discrimination where at least one basis is not covered by the laws administered by EEOC but is covered by the FEPA Ordinance, or where EEOC is mandated by federal court decision or by internal administrative EEOC policy to dismiss the charge, but FEPA can process that charge.

—All charges against Respondents which are designated for initial processing by FEPA in a supplementary memorandum to this Agreement;

—All disability—based charges against Respondents over which EEOC does not have jurisdiction; and,

—All Title VII, up to 10% of ADA charges and up to 28 ADEA charges against Respondents which are State agencies.

—EEOC will refer to the FEPA inquiries that are more than 300 days from the date of violation and therefore non-jurisdictional with the Commission.

B. Notwithstanding any other provision of the Agreement, the FEPA or the EEOC may request to be granted the right to initially process any charge. Such variations shall not be inconsistent with the objectives of this Worksharing Agreement or the Contracting Principles.

C. Each Agency will on a quarterly basis notify the other of all cases in litigation and will notify each other when a new suit is filed. As charges are received by one Agency against a Respondent on the other Agency's liti-

gation list, a copy of the new charge will be sent to the other Agency's litigation unit within 10 working days.

D. EEOC will not defer or refer any charge for the FEPA to process that is not jurisdictional on its face with both Agencies. If it is apparent that one Agency might have jurisdiction when another does not, then the charging Party will be referred to the appropriate Agency.

## IV. EXCHANGE OF INFORMATION

A. Both the FEPA and EEOC shall make available for inspection and copying to appropriate officials from the other Agency any information which may assist each Agency in carrying out its responsibilities. Such information shall include, but not necessarily be limited to, investigative files, conciliation agreements, staffing information, case management printouts, charge processing documentation, and any other material and data as may be related to the processing of dual-filed charges or administration of the contract. The Agency accepting information agrees to comply with any confidentiality requirements imposed on the agency providing the information. With respect to all information obtained from EEOC, the FEPA agrees to observe the confidentiality provisions of Title VII, ADEA, EPA, and ADA.

B. In order to expedite the resolution of charges or facilitate the working of this Agreement, either Agency may request or permit personnel of the other Agency to accompany or to observe its personnel when processing a charge.

## V. RESOLUTION OF CHARGES

A. Both agencies will adhere to the procedures set out in EEOC's Order 916, Substantial Weight Review Manual, and the State and Local Handbook. If there are procedural changes at any point during the contract year, the Agencies agree to renegotiate the terms of this section, as appropriate.

B. For the purpose of according substantial weight to the FEPA final finding and order, the FEPA must submit to the EEOC copies of all documents pertinent to substantial weight review; the evaluation will be designed to determine whether the following items have been addressed in a manner sufficient to satisfy EEOC requirements; including, but not limited to:

1. jurisdictional requirements,
2. investigation and resolution of all relevant issues alleging personal harm with appropriate documentation and using proper theory,
3. relief, if appropriate,
4. mechanisms for monitoring, and enforcing compliance with all terms of conciliation agreements, orders after public hearing or consent orders to which the FEPA is a party.

C. In order to be eligible for contract credit and/or payment, submissions must meet all the substantive and administrative requirements as stipulated in the 1994 Contracting Principles.

D. For the purposes of determining eligibility for contract payment, a final action is defined as the point after which the charging party has no administrative recourse, appeal, or other avenue of redress available under applicable State and Local statutes.

As stipulated in the 1994 Contracting Principles, the FEPA will manage its inventory and work process to effect an overall reduction in the age of its dual-filed inventory. In accordance

with the requirements of Attachment A of the FY 1994 Contracting Principles, the FEPA will receive credit for accepted charge resolutions which fall within the resolution mix outlined below:

A. CHARGES 270 DAYS OLD OR LESS: 60.77 %
B. CHARGES 271 to 360 DAYS OLD: 6.75 %
C. CHARGES 361 to 540 DAYS OLD: 11.25 %
D. CHARGES 541 to 720 DAYS OLD: 11.58 %
E. MORE THAN 720 DAYS OLD: 9.65 %

## VI. IMPLEMENTATION OF THE WORKSHARING AGREEMENT

A. Each agency will designate a person as liaison official for the other agency to contact concerning the day-to-day implementation for the Agreement. The liaison for the FEPA will be the Agency's Contract Manager. The liaison official for the EEOC will be the State and Local Coordinator.

B. The agencies will monitor the allocation of charge-processing responsibilities as set forth in the Agreement. Where it appears that the overall projection appears inappropriate, the appropriate portions of this Agreement will be modified to ensure full utilization of the investigation and resolution capacities of the FEPA and rapid redress for allegations of unlawful employment discrimination.

C. EEOC will provide original forms to be copied by the FEPA, in accordance with the Regulations and the Compliance Manual to be used by the FEPAs in correspondence with Charging Parties and Respondents.

D. If a dispute regarding the implementation or application of this agreement cannot be resolved by the FEPA and District Office Director, the issues will be reduced to writing by both parties and forwarded to the Director of the Office of Program Operations for resolution.

E. This Agreement shall operate from the first (1st) day of October 1993 to the thirtieth (30th) day of September 1994 and may be renewed or modified by mutual consent of the parties.

I have read the foregoing Worksharing Agreement and I accept and agree to the provisions contained therein.

Memorandum of Understanding (MOU), between Miami District Office (MMDO) and Florida Commission on Human Relations (FCHR)

In order to better handle the flow of charges between the FCHR and the MMDO and utilizing case management principles in expediting the resolutions of charges and in order to enhance the opportunity to reduce the age and pending inventory count, the Florida Commission on Human Relations agrees:

To waive initial processing of all charges filed in Pasco, Hernando, Citrus and Hillsborough counties.

*Workload Distribution*

In order to accommodate the workload between the agencies, it is agreed that the Florida Commission will process only those Title VII charges which arise in the following counties:

| | | | |
|---|---|---|---|
| Alachua | Flagler | Lake | St. Johns |
| Baker | Franklin | Leon | Santa Rosa |
| Bay | Gadsden | Levy | Seminole |
| Bradford | Gilchrist | Liberty | Sumter |
| Brevard | Gulf | Madison | Suwannee |
| Calhoun | Hamilton | Marion | Taylor |
| Nassau | Union | Clay | Okaloosa |
| Volusia | Columbia | Holmes | Wakulla |
| Walton | Dixie | Orange | Washington |
| Escambia | Jackson | Putnam | Lafayette |
| Jefferson | | | |

This Memorandum of Understanding, when signed by both parties, will remain in effect until the FCHR Director notifies the EEOC District Director in writing that the Agency has reduced the age and size of its

dual filed pending inventory to (9) nine months.

The provisions of this MOU may be modified or extended by mutual consent.

## WORKSHARING AGREEMENT

### BETWEEN

### FLORIDA COMMISSION ON HUMAN RELATIONS

and the

### EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### FOR FISCAL YEAR 1999

## I. INTRODUCTION

A. The Florida Commission on Human Relations, hereinafter referred to as the FEPA, has jurisdiction over allegations of employment discrimination filed against employers of Fifteen (15) or more employees occurring within the State of Florida based on age, race, sex, color, marital status, religion, national origin and handicap pursuant to the Florida Civil Rights Act of 1992, as amended (Sections 760.01–760.11, Florida Statutes).

The Equal Employment Opportunity Commission, hereinafter referred to as EEOC, has jurisdiction over allegations of employment discrimination occurring throughout the United States where such charges are based on race, color, religion, sex, or national origin, all pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000(e)) (hereinafter referred to as Title VII). EEOC has jurisdiction to investigate and determine charges of discrimination based on age (40 or older) under the Age Discrimination in Employment Act (ADEA) of 1967, as amended (29 U.S.C. § 621 et. seq.), for unequal wages based on sex under the Equal Pay Act of 1963 (29 U.S.C. § 206), and over allegations of employment discrimination based on disability pursuant to Title I of the Americans with Disabilities Act of 1991, (42 U.S.C. § 12101).

B. In recognition of, and to the extent of the common jurisdiction and goals of the two (2) Agencies, and in consideration of the mutual promises and covenants contained herein, the FEPA and the EEOC hereby agree to the terms of this Worksharing Agreement, which is designed to provide individuals with an efficient procedure for obtaining redress for their grievances under appropriate State and Federal laws.

## II. FILING OF CHARGES OF DISCRIMINATION

A. In order to facilitate the assertion of employment rights, the EEOC and the FEPA each designate the other as its agent for the purpose of receiving drafting, and filing charges, including those that are not jurisdictional with the agency that initially receives the charges. EEOC's receipt of charges on the FEPA's behalf will automatically initiate the proceedings of both EEOC and the FEPA for the purposes of Section 706(c) and (e)(1) of Title VII. FEPA's receipt of charges on the EEOC's behalf will automatically initiate the proceedings of both the EEOC and the FEPA for the purpose of Section 760.6(10), Florida Statutes. This delegation of authority to receive charges does not include the right of one Agency to determine the jurisdiction of the other Agency over a charge. Charges can be transferred from one agency to another in accordance with the terms of this agreement or by other mutual agreement.

B. The FEPA shall take all charges alleging a violation of Title VII, ADEA, EPA, or the ADA where both the FEPA and EEOC have mutual jurisdiction, or where EEOC only has jurisdiction, so long as the allegations meet the minimum requirements of those Acts, and for charges specified in Section III.A.1. below, refer them to the EEOC for initial processing.

C. Each Agency will inform individuals of their rights to file charges directly with the other Agency and or assist any person alleging employment discrimination to draft a charge in a manner which will satisfy the requirements of both agencies to the extent of their common jurisdiction. As part of the intake duties, Investigators are to verify with the Charging Parties if they had filed a charge of discrimination with other agencies prior to filing the charge.

Normally, once an agency begins an investigation, it resolves the charge. Charges may be transferred between the EEOC and the Florida Commission on Human Relations within the framework of a mutually agreeable system. Each agency will advise Charging Parties that charges will be resolved by the agency taking the charge except when the agency taking the charge lacks jurisdiction or when the charge is to be transferred in accordance with Section III (DIVISION OF INITIAL CHARGE–PROCESSING RESPONSIBILITIES).

D. For charges that are to be dual filed, each Agency will use EEOC Charge Form 5 (or alternatively, an employment discrimination charge form which within statutory limitations, is acceptable in form and content to EEOC and the FEPA) to draft charges. Specifically, each agency will forward an Affidavit taken at the time of intake and a copy of the Charge Information Form. When a charge is taken based on disability, the nature of the disability shall not be disclosed on the face of the charge.

1. With respect to the ADA, the Florida Commission on Human Relations (FCHR) law is similar to the ADA, but has the following important differences:

a. The statute does not enunciate a standard for evaluating safety requirements.

b. The statute contains no restrictions on disability related inquires and medical Examinations of applicants and employees and no confidentiality provisions. The statue expressly allows employers to require examinations of applicants and employees to determine fitness for jobs.

c. The statute does not contain a provision prohibiting discrimination through a contract.

d. The statute does not contain a provision prohibiting discrimination on the basis of a relationship or association with an individual with a disability.

2. Recognizing the differences set forth above, the FCHR the EEOC agree to the following:

a. For each FCHR ADA charge resolution that involves one or more of the issues identified in 1. above, the FCHR will provide the EEOC with a statement that identifies which of the above issues were addressed in resolving the charge.

b. The FCHR will transfer to the EEOC for initial processing each disability charge it originally receives where it will not receive and resolve all alleged issues in a manner consistent with all require-

ments, standards, prohibitions, and restrictions set forth in the ADA.

E. Within ten calendar days of receipt, each Agency agrees that it will notify both the Charging Party and Respondent of the dual-filed nature of each such charge it receives for initial processing and explain the rights and responsibilities of the parties under the applicable Federal, State, or Local statutes. Each Agency will use EEOC Form 212. Charge Transmittal to transmit charges to each other.

F. The FEPA agrees to provide the EEOC with notice of its final actions on all dual-filed charges. The EEOC agrees to timely issue its Notice of Right to Sue upon receipt of each of the FEPA's acceptable final notices.

G. The EEOC agrees to provide the FEPA with notice of its final actions on all dual-filed charges. The FEPA agrees to timely issue its final action and Notice of Right to Sue, as appropriate, upon receipt of each of EEOC's acceptable final action notices.

III. DIVISION OF INITIAL AGENCY CHARGE–PROCESSING AND INVESTIGATIVE RESPONSIBILITIES

In recognition of the statutory authority granted to the FEPA by Section 706(c) and 706(d) of Title VII as amended and by Title I of the Americans with Disabilities Act, and the transmittal of charges of age discrimination pursuant to the Age Discrimination in Employment Act of 1967, the primary responsibility for resolving charges between the FEPA and the EEOC will be divided as follows:

A. EEOC will initially process/investigate all Title VII, ADA, and ADEA charges that they originally receive. FEPA will initially process all TITLE VII, ADA and ADEA charges that they originally receive pursuant to the divisions of Section III.A.2.

1. For charges originally received by the EEOC and/or to be initially processed by the EEOC, the FEPA waives its right of exclusive jurisdiction to initially process such charges for a period of 60 days for the purpose of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day.

In addition, the EEOC will initially process the following charges:

—All Title VII, ADA and concurrent Title VII/ADA charges jurisdictional with the FEPA and received by the FEPA 240 days or more after the date of violation;

—All concurrent Title VII/EPA charges;

—All charges against the FEPA or its parent organization where such parent organization exercises direct or indirect control over the charge decision making process;

—All charges filed by EEOC Commissioners;

—Charges also covered by the Immigration Reform and Control Act;

—Complaints referred to EEOC by the Department of Justice, Office of Federal Contract Compliance Programs, or Federal fund-granting agencies under 29 CFR § 1640, 1641, and 1691.

—Any charge where EEOC is a party to a Conciliation Agreement or a Consent Decree which, upon mutual consultation and agreement, is relevant to the disposition of the charge. The EEOC will notify the FEPA of all Conciliation Agreements and Consent Decrees which

have features relevant to the disposition of subsequent charges;

—Any charge alleging retaliation for filing a charge with EEOC or for cooperating with EEOC; and

—All charges against Respondents which are designated for initial processing by the EEOC in a supplementary memorandum to this Agreement.

2. The FEPA will initially process the following types of charges:

—Any charge alleging retaliation for filing a charge with the FEPA or cooperating with the FEPA;

—Any charge where the FEPA is a party to a Conciliation Agreement or a Consent Decree which, upon mutual consultation and agreement, is relevant to the disposition of the charge. The FEPA will provide the EEOC with an on-going list of all Conciliation Agreements and Consent Decrees which have features relevant to the disposition of subsequent charges;

—All charges which allege more than one basis of discrimination where at least one basis is not covered by the laws administered by EEOC but is covered by the FEPA Statute, or where EEOC is mandated by federal court decision or by internal administrative EEOC policy to dismiss the charge, but FEPA can process that charge.

—All charges against Respondents which are designated for initial processing by FEPA in a supplementary memorandum to this Agreement; and

—All disability-based charges against Respondents over which EEOC does not have jurisdiction.

—EEOC will refer to the FEPA inquiries that are more than 300 days from the date of violation and therefore non-jurisdictional with the Commission.

*Workload Distribution*

It is agreed that the Florida Commission will process only those Title VII, ADA and ADEA charges which arise in the following counties:

| | | | |
|---|---|---|---|
| Alachua | Flagler | Lake | St. Johns |
| Baker | Franklin | Leon | Santa Rosa |
| Bay | Gadsden | Levy | Seminole |
| Bradford | Gilchrist | Liberty | Sumter |
| Brevard | Gulf | Madison | Suwannee |
| Calhoun | Hamilton | Marion | Taylor |
| Nassau | Union | Clay | Okaloosa |
| Volusia | Columbia | Holmes | Wakulla |
| Walton | Dixie | Orange * | Washington |
| Escambia | Jackson | Putnam | Lafayette |
| Jefferson | Polk | | |

* Exclusive of The City of Orlando

These provisions may be modified or extended by mutual consent.

B. Notwithstanding any other provision of the Agreement, the FEPA or the EEOC may request to be granted the right to initially process any charge subject to agreement of the other agency. Such variations shall not be inconsistent with the objectives of this Worksharing Agreement or the Contracting Principles.

C. Each Agency will on a quarterly basis notify the other of all cases in litigation and will notify each other when a new suit is filed. As charges are received by one Agency against a Respondent on the other Agency's litigation list a copy of the new charge will be sent to the other Agency's litigation unit within 10 working days.

IV. EXCHANGE OF INFORMATION

A. Both the FEPA and EEOC shall make available for inspection and copying to appropriate officials from the other Agency any information which may assist each Agency in carrying out its responsibilities. Such information shall include, but not nec-

essarily be limited to, investigative files, conciliation agreements, staffing information, case management print-outs, charge processing documentation, and any other material and data as may be related to the processing of dual-filed charges or administration of the contract. The Agency accepting information agrees to comply with any confidentiality requirements imposed on the agency providing the information. With respect to all information obtained from EEOC, the FEPA agrees to observe the confidentiality provisions of Title VII, ADEA, and ADA.

B.  In order to expedite the resolution of charges or facilitate the working of this Agreement, either Agency may request or permit personnel of the other Agency to accompany or to observe its personnel when processing a charge.

## V.  RESOLUTION OF CHARGES

A.  Both agencies will adhere to the procedures set out in EEOC's Order 916. Substantial Weight Review Manual, and the State and Local Handbook as revised.

B.  For the purpose of according substantial weight to the FEPA final finding and order, the FEPA must submit to the EEOC copies of all documents pertinent to conducting a substantial weight review; the evaluation will be designed to determine whether the following items have been addressed in a manner sufficient to satisfy EEOC requirements; including, but not limited to:

1.  jurisdictional requirements,

2.  investigation and resolution of all relevant issues alleging personal harm with appropriate documentation and using proper theory,

3.  relief, if appropriate,

4.  mechanisms for monitoring and enforcing compliance with all terms of conciliation agreements, orders after public hearing or consent orders to which the FEPA is a party.

C.  In order to be eligible for contract credit and/or payment, submissions must meet all the substantive and administrative requirements as stipulated in the Contracting Principles.

D.  For the purposes of determining eligibility for contract payment, a final action is defined as the point after which the charging party has no administrative recourse, appeal, or other avenue of redress available under applicable State and Local statutes.

## VI.  IMPLEMENTATION OF THE WORKSHARING AGREEMENT

A.  Each agency will designate a person as liaison official for the other agency to contact concerning the day-to-day implementation for the Agreement. The liaison for the FEPA will be Agency's Executive Director. The liaison official for the EEOC will be the State and Local Coordinator.

B.  The agencies will monitor the allocation of charge-processing responsibilities as set forth in the Agreement. Where it appears that the overall projection appears inappropriate, the appropriate portions of this Agreement will be modified to ensure full utilization of the investigation and resolution capacities of the FEPA and rapid redress for allegations of unlawful employment discrimination.

C.  EEOC will provide original forms to be copied by the FEPA, in accordance with the Regulations and the Compliance Manual to be used by the FEPAs in correspondence with Charging Parties and Respondents.

D. If a dispute regarding the implementation or application of this agreement cannot be resolved by the FEPA and District Office Director, the issues will be reduced to writing by both parties and forwarded to the Director of the Office of Program Operations for resolution.

E. This Agreement shall operate from the first (1st) day of October 1998 to the thirtieth (30th) day of September 1999 and may be renewed or modified by mutual consent of the parties.

I have read the foregoing Worksharing Agreement and I accept and agree to the provisions contained therein.

### FY 2000 EXTENSION OF WORKSHARING AGREEMENT

Inasmuch as there have been no substantive changes in the processes, procedures, statutes, policies or regulations that would adversely affect or substantially alter the Worksharing arrangement between the EEOC–Miami–District Office and the Florida Commission on Human Relations, or that would affect the processing of charges filed under the pertinent Federal, state or local statutes, the parties agree to extend the current worksharing agreement that was executed on October 1, 1998 through the FY 2000 Charge Resolution Contract Option Period. This agreement, as well as the attendant Worksharing Agreement may be reopened and amended by mutual consent of the parties.