**In Re SCIENTIFIC–ATLANTA, INC.
SECURITIES LITIGATION,**

**No. CIV.A.1:01–CV–1950–R.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 23, 2002.

Martin D. Chitwood, Lauren S. Antonino, David Bain, Chitwood & Harley, Atlanta, GA, Lynn L. Sarko, Juli E. Farris,

Elizabeth A. Leland, Keller Rohrback, LLP, Seattle, WA, Lead Counsel for Plaintiffs.

Kenneth J. Vianale, Robert R. Adler, Milberg, Weiss, Bershad, Hynes & LeRach LLP, Boca Raton, FL, Co–Lead Counsel for Plaintiffs.

Oscar N. Person, Susan E. Hurd, Kathleen D. Zylan, Alston & Bird LLP, Atlanta, GA, for Defendants.

## *ORDER*

STORY, District Judge.

This action was filed as a putative securities fraud class action. Essentially, the Complaint alleges that Plaintiff and others purchased Scientific–Atlanta, Inc. ("S–A") securities at an artificially inflated price as a result of false and misleading representations made by the persons controlling S–A during the relevant time period. Plaintiffs allege that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 and Rule 10b–5 promulgated thereunder. Now before the Court for consideration are Defendants' Motion to Dismiss Consolidated Class Action Complaint [37–1] and Plaintiffs' Motion for Oral Argument [45–1]. As a preliminary matter, the Court finds that the issues determined in this Order have been adequately briefed by the parties; therefore, oral argument is unnecessary. Accordingly, Plaintiffs' Motion for Oral Argument [45–1] is hereby **DENIED**. After reviewing the record and considering the arguments of the parties, the Court enters the following Order.

### Background

The facts relied upon in this Order are taken from the Consolidated Class Action Complaint [35–1]. As required on a motion to dismiss, the Court has construed

the pleadings broadly, accepted all facts pleaded therein as true, and viewed all inferences in a light most favorable to Plaintiffs. *Jackson v. Birmingham Bd. of Educ.*, 309 F.3d 1333, 1334 (11th Cir.2002).

Plaintiffs purchased S–A common stock during the class period.[1] Defendant S–A is a cable equipment manufacturer which supplies transmission networks for home broadband access and provides digital services like video and high-speed internet access. Defendants James F. McDonald ("McDonald") and Wallace G. Haislip ("Haislip") served during the relevant time period as S–A's Chief Executive Officer and Chief Financial Officer respectively.

The Consolidated Class Action Complaint ("the Complaint") focuses on fiscal year 2001, which began in July 2000 and ended in June 2001. According to the Complaint, during July, August, and September 2000, the first quarter of fiscal year 2001, S–A was performing well, as evidenced by its number-one ranking on the Standard & Poors 500 index. (Compl.¶ 49.) However, analysts projected that the first quarter of fiscal year 2001 would be the last strong quarter for most Standard & Poors 500 companies. (*Id.* ¶ 50.)

During the second quarter, many telecommunications and cable businesses began tightening their budgets, and cable operators including AT & T reduced purchases. (*Id.* ¶¶ 51–52.) A November 24, 2000 letter from AT & T to S–A asked S–A to hold pending shipments, stating that AT & T would start purchasing products from S–A again in January 2001. (*Id.* ¶ 53.) At this time, PRN Newswire reported that AT & T intended to limit product receipts from S–A, but S–A explained that the slowdown would only impact one to two percent of the Company's sales. (*Id.* ¶¶ 56–57.) In fact, S–A reported accelerating demand for its products. (*Id.* ¶ 58.) The Company followed these reassurances by announcing new contracts between S–A and Fox, Sony, and Intel, *inter alia*, and by announcing the introduction of a new Explorer set-top. (*Id.* ¶¶ 60–64.) By December 2000, the end of the second quarter of fiscal year 2001, more cable operators and fiber infrastructure providers were beginning to cut capital spending, but S–A issued no public statement about the effect such cutbacks would have on its business. (*Id.* ¶ 67.)

When the third quarter began in January 2001, AT & T and another S–A customer canceled previous orders, but S–A had already produced the products. (*Id.* ¶ 68.) The Complaint alleges that S–A should have disclosed this information to shareholders because the loss of this business adversely affected the Company's

---

1. In a previous order, the Court stated that the lead plaintiffs were appointed to represent a putative class of persons who purchased S–A stock between April 19, 2001 and July 19, 2001. (Order, Nov. 29, 2001 at 3.) The Consolidated Class Action Complaint alleges a class period of January 18, 2001 to August 16, 2001. Defendants argue that Plaintiffs do not have standing to pursue claims associated with this longer class period. (Def.'s Br. in Support of Mot. To Dismiss at 9, n. 16.) Defendants' assertion misses the mark for several reasons. First, Plaintiffs correctly point out that they are entitled to amend their Complaint without leave of court since no answer has been filed. The longer class period is simply an amendment. (Pl's Br. in Resp. to Mot. to Dismiss at 49); *see* Fed. R.Civ.P. 15(a) ("A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served…"). Second, the class period issue can be addressed at the class certification stage. (Pl's Br. in Resp. to Mot. To Dismiss at 49.) Third, if a class of persons purchasing stock between January and August 2001 were certified, then the lead Plaintiffs already appointed would be qualified to represent the class because they purchased S–A stock within the longer class period. For these reasons, Defendants' objection to the alleged class period is not a ground for dismissal.

prospects for the third quarter. (*Id.*) Around this time, S–A issued a press release announcing record financial results for the second quarter, but the report also indicated that sales and bookings for AT & T Broadband were down significantly. (*Id.* ¶¶ 72–73.) On February 9, 2001, S–A filed Form 10–Q with the Securities Exchange Commission ("SEC"), reporting these second quarter results. (*Id.* ¶ 95.) According to the Complaint, in February 2001 one of S–A's chief competitors, Motorola, announced that it would fall short of its financial forecasts due to a slowing economy. (*Id.* ¶ 101.) S–A continued to lose business from customers like Cablevision and Charter Communications. (*Id.* ¶¶ 102–103, 106.) In addition, S–A was having problems in its Juarez, Mexico plant, and the Company began cutting back production. (*Id.* ¶¶ 105, 108.)

The Complaint avers that, because of these issues, management became concerned about the Company's ability to meet market expectations and what effect the declining demand would have on the stock price. (*Id.* ¶¶ 112–113.) Allegedly because of this concern, S–A sought to induce customers to increase substantially their purchases before they would, in the normal course, otherwise purchase S–A's products. This practice, commonly referred to as "channel stuffing" has the effect of shifting earnings into earlier quarters to the detriment of earnings in later quarters. The Company encouraged sales by giving special discounts, offering longer payment terms, and giving credits to customers who agreed to receive and store excess inventory in warehouses. (*Id.* ¶¶ 114–124.) According to Plaintiffs, S–A concealed these practices not only by failing to disclose the activity but also by violating the revenue recognition policies outlined in the Generally Accepted Accounting Principles ("GAAP"), notably by invoicing for product the Company had not delivered to the customers. (*Id.* ¶ 129–

138.) During this period, S–A did nothing to inform shareholders of the alleged difficulties or the channel stuffing and accounting practices. (*Id.* ¶ 142.)

In February 2001, S–A announced several new business relationships, including an agreement with an Argentine cable supplier for use of S–A products, a contract with a supplier in Germany, and a new contract with Cox. (*Id.* ¶¶ 143–45.) By March 2001, news organizations were reporting that S–A did not adjust its earning forecasts and highlighting S–A's worldwide sales. These reports bolstered the optimistic view of the Company's prospects. (*Id.* ¶¶ 146–47.) During this time, the Company did not disclose the alleged declining demand for its products, the channel stuffing activity, or the recent production cutbacks. (*Id.* ¶¶ 149, 152.)

During the fourth quarter of fiscal year 2001, Plaintiffs allege that S–A continued its pervasive channel stuffing in the face of a slowing economy and postponed orders by customers. (*Id.* ¶¶ 4, 197–202.) In April 2001, the Company's third quarter results were announced, and the press release stated that there had been an increase in bookings, an increase in sales, and an increase in earnings. (*Id.* ¶ 162.) The announced earnings exceeded consensus estimates. (*Id.* ¶ 164.) Plaintiffs allege that the announcement of the third quarter results was misleading because Defendants did not disclose the pervasive channel stuffing or the prematurely recognized revenue during the third quarter. (*Id.* ¶ 165.) In addition, Plaintiffs assert that Defendants should have disclosed the fact that demand for S–A products was declining and that S–A was cutting back production. (*Id.* ¶ 166.) Around the same time, McDonald told a reporter that consumer demand for the Company's digital set-tops was on the rise and emphasized analysts' optimism about S–A's future earning potential. (*Id.* ¶¶ 154–55.) Dur-

ing this same interview, McDonald was asked about the reported growth of the Company, and he explained that it resulted from sales growth. (*Id.* ¶ 156.) Haislip made similar statements in an interview with an Atlanta Constitution reporter in late March. (*Id.* ¶¶ 153–54.) Analyst reports following these interviews compared S–A to its competitor Motorola, commenting that S–A's outlook was more favorable since AT & T was not such an important customer and since S–A had not offered the same substantial discounts to pull demand forward. (*Id.* ¶ 157.)

On May 11, 2001, S–A filed its third quarter report with the SEC on Form 10–Q. (*Id.* ¶ 189.) The Form 10–Q repeated the financial information released in April 2001 and stated that S–A was experiencing strong growth in the subscriber business and sales of cable set-top boxes. (*Id.* ¶ 190.) According to the Form 10–Q filed with the SEC, the Company's financial results could be explained by strong demand and an increase in manufacturing capacity. (*Id.* ¶¶ 191, 193.) The Form 10–Q also warned that loss of business from AT & T could have a material adverse effect on S–A's business. (*Id.* ¶ 192.) Plaintiffs allege that the Form 10–Q was misleading because demand was in fact declining and Defendants were improperly stuffing channels and violating accepted accounting practices to boost its sales figures. (*Id.* ¶ 194.)

Although the SEC filing had noted the possible adverse effect of the loss of AT & T's business, in a June 4, 2001 interview McDonald minimized the effect of the loss of sales to AT & T, touted the growing demand for digital video, and reported that S–A's customers were doing well. (*Id.* ¶¶ 206–7.) In early June 2001, S–A announced a contract for the sale of set-tops to Telwest Communications of the United Kingdom, an expanded contract with a Brazilian cable operator, and a new rela-tionship with Comcast for support of a large scale commercial video-on-demand deployment. (*Id.* ¶¶ 209–11.) According to the Complaint, statements by S–A created a favorable market perception of the Company, and Defendants failed to correct that perception by disclosing the decreasing demand, channel stuffing practices, and accounting problems.

On July 19, 2001, S–A announced that the Company failed to meet revenue forecasts for fiscal year 2001 due to decreased demand for its products. At the same time, S–A reduced its earnings forecasts for the first quarter of fiscal year 2002. (*Id.* ¶¶ 221–23.) As a result of the announcement, the price of S–A common stock plummeted, dropping from $35.08 per share to $22.80 per share. (*Id.* ¶ 17.) On August 16, 2001, Defendants filed their Form 10–K for fiscal year 2001 with the SEC, and the filing reported the reduced demand and customers' accumulated inventories. The price of S–A stock fell from $25.01 per share to $21.24 per share. (*Id.* ¶ 18.)

Allegedly, Defendants McDonald and Haislip had access to adverse information about the business, finances, markets, and present and future prospects of S–A during the class period. Moreover, Plaintiffs aver that Defendants McDonald and Haislip were obligated to disseminate accurate information about the Company's operations and financial condition and to correct misinformation that could deceive the public. According to the Complaint, Defendants' failure to meet this obligation caused the price of S–A securities to be inflated artificially, damaging Plaintiffs and the putative class. In addition, knowledge of the undisclosed adverse information allowed Defendants McDonald and Haislip to sell their own S–A stock at artificially inflated prices. Additional facts will be included in the following discussion as necessary for the legal analysis.

## Discussion

The Complaint alleges that each of the Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5. Plaintiffs further allege that the individual Defendants are "controlling persons" of S–A as defined by Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), and are therefore individually liable for S–A's alleged violations of Section 10(b) and Rule 10b–5. Defendants move to dismiss Plaintiffs' Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for failure to plead fraud with particularity under Rule 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4(b).

### Applicable Pleading Requirements

Federal Rule of Civil Procedure 12(b)(6) empowers the Court to grant a defendant's motion to dismiss when a complaint fails to state a claim upon which relief can be granted. A motion to dismiss should be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir.1992). Motions to dismiss are disfavored and are rarely granted. *Gasper v. La. Stadium & Exposition Dist.*, 577 F.2d 897, 900 (5th Cir.1978);[2] *Woodham v. Fed. Transit Admin.*, 125 F.Supp.2d 1106, 1108 (N.D.Ga.2000) (Camp, J.). In considering whether to grant or deny a motion to dismiss pursuant to Rule 12(b), the Court may look only to the pleadings. Fed.R.Civ.P. 12(b). In addition, the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); *Conner v. Tate*, 130 F.Supp.2d 1370, 1373 (N.D.Ga.2001) (Thrash, J.).

Nonetheless, the Eleventh Circuit has held that extrinsic documents can be considered where the documents are referred to in the complaint and are "central" to the plaintiff's claim. *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir.1999); *Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1369 (11th Cir.1997). In securities fraud actions, the district court can also examine other information that was publicly available to reasonable investors at the time that the defendant made the statements the plaintiff alleges to be fraudulent. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276 (11th Cir.1999) (considering publicly filed SEC documents at motion to dismiss stage); *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir.1996) (same). The PSLRA contemplates that the district court will serve a gatekeeping role at the motion to dismiss stage. *Sturm v. Marriott Marquis Corp.*, 85 F.Supp.2d 1356, 1366 (N.D.Ga.2000) (Thrash, J.). The district courts cannot fulfill their gatekeeping role if plaintiffs are free to quote selectively or out of context from the documents that they rely upon, avoiding further examination of the documents by not attaching them to the complaint. *Id.; Malin v. Ivax Corp.*, 17 F.Supp.2d 1345, 1351 (S.D.Fla.1998). In this case, Defendants have attached an extensive appendix to their motion to dismiss. To the extent that the appendix includes documents central to Plaintiffs' claims and publicly filed documents, the Court has considered the exhibits in issuing this ruling.

---

**2.** The United States Court of Appeals for the Eleventh Circuit adopted as binding precedent the decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to September 30, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir.1981).

■ Defendants also claim that Plaintiffs have not satisfied the pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA, the statute enacted to cure perceived abuses in prosecuting class actions brought pursuant to federal securities laws. Initially, to survive a motion to dismiss, allegations of securities fraud must satisfy the requirements of Federal Rule of Civil Procedure 9(b). That rule provides, in relevant part, that "[t]he circumstances constituting fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b). To provide a sufficient level of factual support for a claim of securities fraud, a plaintiff must plead the circumstances of fraud in detail, including "[t]he who, what, when, where, and how." *In re World Access, Inc. Sec. Litig.*, 119 F.Supp.2d 1348, 1353 (N.D.Ga.2000) (Evans, J.). The PSLRA added several additional pleading requirements to claims arising under the Exchange Act. First, the PSLRA provides that in any private action premised on an untrue statement or omission of material fact, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Moreover, with respect to any claim where recovery is permitted "only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u–4(b)(2). Essentially, in the Eleventh Circuit, a private securities plaintiff proceeding under the PSLRA must plead facts that constitute strong circumstantial evidence of conscious misconduct or severe recklessness. *Bryant*, 187 F.3d at 1287.

Specifically, Defendants contend that Plaintiffs have failed to state a claim for the following reasons: (1) accurate statements of present or historical fact are non-actionable; (2) general statements of corporate optimism are non-actionable; and (3) S–A's public filings disclosed the relevant risks. Defendants also argue that Plaintiffs failed to plead fraud with particularity because Plaintiffs have failed to explain why the misstatements and nondisclosures were false or misleading and because Plaintiffs have not pled facts that would give rise to a strong inference of scienter.

## I. Violations of Section 10(b) of the Exchange Act and Rule 10b–5

To state a claim for securities fraud under section 10(b) of the Exchange Act [3] and under Rule 10b–5,[4] plaintiffs must al-

---

**3.** Section 10(b) states, in pertinent part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances un-

der which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operated or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

15 U.S.C. § 78j(b).

**4.** Rule 10b–5 makes it unlawful "to make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the

lege: (1) a misstatement or omission of material fact, (2) made with scienter, (3) upon which the plaintiff justifiably relied, (4) that proximately caused the plaintiff's damages. *Bryant,* 187 F.3d at 1281. The Court will consider whether Plaintiffs have pled facts supporting each element of the securities fraud claim.

### A. Misrepresentations or Omissions of Material Fact

The primary element of a Rule 10b–5 claim is materially misleading statements or omissions. *Basic, Inc. v. Levinson,* 485 U.S. 224, 246–47, 108 S.Ct. 978, 991, 99 L.Ed.2d 194 (1988). A false statement or omission is considered "material" if its disclosure would alter the total mix of facts available to an investor and "if there is a substantial likelihood that a reasonable shareholder would consider it important" to an investment decision. *Id.* at 246–47, 108 S.Ct. 978; *In re Miller Indus., Inc. Sec. Litig.,* 12 F.Supp.2d 1323, 1330 (N.D.Ga.1998) (Thrash, J.). Although materiality is a mixed question of law and fact, a complaint may not be dismissed under Rule 12(b)(6) unless the alleged misstatements and omissions are "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2nd Cir. 1985).

In this case, Plaintiffs have identified numerous statements that they contend were false or misleading. After conducting an extensive review of the Complaint, the Court characterizes the alleged false and misleading statements and omissions for ease of discussion. More particular facts about the statements and omissions

will be provided below when the Court discusses whether Plaintiffs have pled sufficient facts to meet the PSLRA's particularity requirement. First, Plaintiffs aver that Defendants falsely reported that demand was accelerating when demand was falling both for S–A and its competitors. Specifically, Defendants allegedly: (1) distinguished S–A from its competitors by advising the public that S–A was immune from the market-wide decrease in demand; (2) deemphasized the expected effect of the loss of business from AT & T;[5] and (3) failed to disclose cutbacks in production. Second, Defendants propped up demand with undisclosed channel stuffing. More particularly, Plaintiffs assert that Defendants artificially stimulated revenue in the short term by offering incentives like discounts, following a liberal return policy at odds with the Company's stated return policy, giving credits for warehousing, and agreeing that customers could receive product without payment. Defendants allegedly hid this channel stuffing activity by falsely enumerating the reasons for the record growth in fiscal year 2001. Finally, Defendants improperly recognized revenue in violation of the GAAP.

### 1. Whether the Alleged False or Misleading Statements and Omissions Were Material

■ Defendants contend that the allegedly false and misleading statements and omissions included in the Complaint were not material for several reasons. First, Defendants ask the Court to dismiss the Complaint because many of the statements outlined in the Complaint are non-actionable statements of present or historical fact. Defendants offer as an example a

circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5.

**5.** The Court notes that S–A did warn investors that the loss of business from a significant

MSO could have a material adverse effect on S–A's business. (Form 10–Q, Nov. 13, 2000, Defs.' Ex. 99.) In fact, the Complaint also states that this warning was given. (Compl. ¶ 192.)

statement in a press release reporting good financial results in the second quarter of fiscal year 2001. (Defs.' Br. in Supp. of Mot. to Dismiss at 15.) According to Defendants, statements such as the example given accurately reported the Company's past performance and cannot form the basis of a securities fraud action. The Court agrees with this statement of the law. When reviewing the Complaint, the Court noted many statements of accurate present or historical fact that would not be actionable. However, the Court concludes that Plaintiffs included some statements that could not form the basis for a claim merely as background or for context. These facts serve an important purpose because the Court must look to the "total mix" of facts to determine whether the allegedly false and misleading statements and omissions would be material to a reasonable investor. Therefore, in determining whether the Complaint should be dismissed, the Court will look for statements and omissions that can be characterized as false and misleading statements under Section 10(b) and Rule 10b–5, while remaining cognizant of the inclusion of non-actionable statements of accurate present and historical fact.

Second, Defendants argue that vague statements of corporate optimism, or puffery, are not actionable and, to the extent that Plaintiffs have included such statements in the Complaint, no claim is stated because reasonable investors do not rely on such statements. Plaintiffs contend that to the extent that Defendants claim that some statements were merely puffery, those statements contained false information at the time of publication. A statement can be dismissed as puffery as a matter of law only if it is immaterial because it is so exaggerated or so vague that a reasonable investor would not rely on it in considering the "total mix" of facts available. *Hoxworth v. Blinder, Robinson & Co., Inc.,* 903 F.2d 186, 200–01 (3rd Cir.1990). Statements that do more than offer rosy predictions when a defendant knows that the statements are false can be the basis of a securities fraud action. *See In re Providian Fin. Corp. Sec. Litig.,* 152 F.Supp.2d 814, 815 (E.D.Pa.2001). In the present case, Plaintiffs have alleged that Defendants made statements about the Company's success, its customers' confidence and growing needs for S–A products, the success of the Company's business strategies, and the good economic success of the Company's customers. Such statements were not so exaggerated or vague that the Court can find as a matter of law that the statements were not material. Also, Plaintiffs have alleged that Defendants knew that the statements were false at the time they were made and have provided facts that, if proven, could support that conclusion. Furthermore, in analyzing the claims presented, the Court has labored to focus on material misrepresentations and omissions that would not fall into the category of puffery. The statements and omissions summarized in this analysis are not the type of statements that could be categorized as statements of corporate optimism upon which reasonable investors would not rely.

Finally, Defendants argue that many of the alleged false statements and omissions cannot be considered material because S–A's public filings disclosed the relevant risks. According to Defendants, S–A warned stock purchasers that risks like the "uncertainties relating to customer plans and commitments," "changes in customer order patterns," and "dependence on the cable television industry and cable television spending" could affect the Company's future performance. (Form 10–Q, Nov. 13, 2000, Defs.' Ex. 99.) Furthermore, Defendants assert that the Company's performance in early 2001 can be related to a general economic downturn and that Defendants had no duty to warn

investors about general economic trends. In spite of these warnings, the Complaint alleges that Defendants downplayed concerns by continuing to report accelerating demand, minimizing the expected effects of the loss of AT & T's business in public statements, and masking the effects of the economic downturn with pervasive channel stuffing and violations of the GAAP.

The Court cannot say that the noted statements and omissions in the present case would be unimportant to a reasonable investor. According to the Complaint, Investors were led to believe that demand for S–A's products was accelerating, but the Company failed to reveal that demand was actually decreasing and that the loss of business from a major customer could have a significant effect on the bottom line. In addition, the sales and earnings numbers were being artificially inflated by channel stuffing activity. If investors knew about S–A's channel stuffing practice, they could surmise that revenues in later quarters would decrease as customers used the stockpiled inventory rather than purchasing more product.[6] The alleged improper revenue recognition in violation of the GAAP simply added to the perception that S–A's business was doing well in comparison to its main competitors. The Court concludes that these facts would be material to a reasonable investor.

**2. Whether the Alleged Statements or Omissions Were Protected Under the Statutory Safe Harbor or Bespeaks Caution Doctrine**

■ As explained by the foregoing analysis, the Court finds that the Complaint sufficiently alleges material misrepresentations and omissions that could form the basis for a claim of securities fraud. Now the Court must consider whether the De-

fendants' statements are protected by the statutory safe harbor for forward-looking statements or by the judicially-created "bespeaks caution" doctrine.

■ The PSLRA's safe harbor provision provides protection under certain circumstances against claims brought under the Exchange Act for forward-looking statements. 15 U.S.C. § 78u–5(c)(1)(A)(I). Generally, "forecasts, opinions, or projections" do not amount to "material misrepresentations" if "meaningful cautionary statements" accompany the forward-looking statements. *Saltzberg v. TM Sterling/Austin Assocs.*, 45 F.3d 399, 400 (11th Cir.1995); *see* 15 U.S.C. § 78u–4(b)(2). The safe harbor provision protects against liability "based on forward-looking statements if: (1) the statement is identified as a forward-looking statement and accompanied by cautionary language, (2) the statement was immaterial, or (3) the plaintiffs fail to establish that the person (or entity) making the statement had 'actual knowledge' of its falsity." *In re ValuJet, Inc. Sec. Litig.*, 984 F.Supp. 1472, 1479 (N.D.Ga.1997) (Thrash, J.); *see also Grassi v. Information Resources, Inc.*, 63 F.3d 596, 599 (7th Cir.1995) (citing *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1333 n. 9 (7th Cir.1995) and opining that forward-looking statement can be fraudulent only if "management did not genuinely believe the projection or [if] the projection lacked any reasonable basis at the time it was made."); *DiLeo v. Ernst & Young*, 901 F.2d 624, 628 (7th Cir.1990) ("There is no 'fraud by hindsight.'") (citing *Denny v. Barber*, 576 F.2d 465, 470 (2nd Cir.1978)). The judicially-created "bespeaks caution" doctrine is the safe harbor's counterpart, and it "protect[s] statements in the nature

---

**6.** One analyst's comparison of Motorola and S–A underscores the materiality of the channel stuffing. The analyst opined that S–A's outlook was more favorable than that of Mo-

torola because S–A had not offered the same substantial discounts to pull demand forward. (Compl.¶ 157.)

of projections that are accompanied by meaningful cautionary statements and specific warnings of the risks involved, so as to 'bespeak caution' to investors that actual results may differ, thereby shielding the statements from § 10(b) and Rule 10b–5 liability." *Bryant,* 187 F.3d at 1276 n. 5 (citing *Saltzberg v. TM Sterling/Austin Assoc.,* 45 F.3d 399 (11th Cir.1995)).

■ According to Defendants, Plaintiffs seek to establish liability on the basis of forward-looking statements that would be protected by the safe harbor. Plaintiffs clarify that some of the supposedly forward-looking statements that Defendants contend to be non-actionable were not intended to be actionable either because they were made before the beginning of the class period or because they were not alleged to be false. According to Plaintiffs, the other allegedly forward-looking statements are taken out of context, and if the statements are read in context they misrepresent the reasons for the Company's success at the time they were made. The statutory safe harbor does not apply to shield Defendants from liability in this case for two reasons. First, the Complaint refers to misrepresentations or omissions of historical fact along with the forward-looking statements. *Gross v. Medaphis Corp.,* 977 F.Supp. 1463, 1473 (N.D.Ga. 1997) (Hull, J.); *accord In re Towne Services, Inc. Sec. Litig.,* 184 F.Supp.2d 1308, 1320 (N.D.Ga.2001). Second, the Complaint avers that Defendants had actual knowledge of the falsity of these statements at the time they were made. The safe harbor does not apply if Plaintiffs can demonstrate such knowledge. *ValuJet,* 984 F.Supp. at 1479. Since the Court must take Plaintiffs' allegations as true, dismissal is not warranted.

Even if the statements at issue were found to be forward-looking, Defendants did not include the meaningful cautionary language that must accompany the statements before the safe harbor can be invoked. "Boilerplate warnings will not suffice as meaningful cautionary statements ... The cautionary statements must convey substantive information about factors that realistically could cause results to differ materially from those projected in the forward-looking statement." *World Access,* 119 F.Supp.2d at 1357 (quoting legislative history); *see also In re MobileMedia Sec. Litig.,* 28 F.Supp.2d 901, 928 (D.N.J. 1998) ("A defendant must establish that the cautionary statements 'relate directly to that on which investors claim to have relied.' ") (internal citation omitted). In the present case, Defendants did offer cautionary language pointing out generalized risks but did not caution against the more specific risks known to them at the time the statements were made. Therefore, Defendants cannot take advantage of the statutory safe harbor or the bespeaks caution doctrine.

**3. Whether the Alleged Material Misrepresentations or Omissions Are Sufficient To State a Claim**

■ Defendants also argue that allegations of channel stuffing and the GAAP violations are insufficient to state a claim. Defendants correctly state that there is nothing inherently wrongful about pressing for sales to be made earlier than in the normal course. *Greebel v. FTP Software, Inc.,* 194 F.3d 185, 202 (1st Cir.1999)[7]. However, a plaintiff may state a claim for securities fraud by alleging that a company materially misrepresented its financial condition by failing to disclose sales practices that encouraged customers to purchase

---

**7.** It is worth noting that the analysis in *Greebel* focuses on whether channel stuffing constituted indirect evidence of scienter rather than whether non-disclosure of channel stuffing was actionable. 194 F.3d at 202–03.

substantial advance inventories of product because such practices could reduce the company's future revenues. *See Malin v. Ivax, Corp.*, 17 F.Supp.2d 1345, 1349 (S.D.Fla.1998) (explaining how company used discounts and incentives to encourage purchase of advance inventories resulting in inflated financial results). Moreover, a company is obligated to reveal channel stuffing once sales, earnings, and growth projections were disclosed because such information could be important to a reasonable investor. *In re Campbell Soup Co. Sec. Litig.*, 145 F.Supp.2d 574, 589 (D.N.J.2001); *see also Sherleigh Assocs., LLC v. Windmere–Durable Holdings, Inc.*, 178 F.Supp.2d 1255, 1270 (S.D.Fla.2000) (concluding that failure to disclose channel stuffing altered perception of market conditions and therefore constituted omission of material fact). Here, Plaintiffs allege that the Company misrepresented its financial condition by failing to disclose its channel stuffing activity. Such allegations are sufficient to state a claim.

Likewise, violations of the GAAP may constitute false or misleading statements of material fact in violation of Rule 10b–5. *See Carley Capital Group v. Deloitte & Touche, L.L.P*, 27 F.Supp.2d 1324, 1334 (N.D.Ga.1998) (Thrash, J.) (citing additional authority); *Medaphis*, 977 F.Supp. at 1472; *S.E.C. v. Sys. Software Assocs., Inc.*, 145 F.Supp.2d 954, 958 (N.D.Ill.2001) ("A financial statement that recognizes revenue and does not conform to the requirements of GAAP is presumptively a false or misleading statement of material fact under Rule 10b–5."); *In re Aetna, Inc. Sec. Litig.*, 34 F.Supp.2d 935, 956 (E.D.Pa.1999) (explaining that distorting financial information with unreasonable accounting practices can be basis of securities fraud claim). Allegedly, Defendants' violations of the GAAP distorted the financial information available to the public, and these allegations are sufficient to state a claim. Even so, as will be explained later in this analysis, Plaintiffs also must allege that Defendants were aware of the revenue recognition errors. *Lovelace*, 78 F.3d at 1020.

**4. Whether the Alleged Material Misrepresentations or Omissions Are Sufficient to Satisfy the PSLRA's Pleading Standards**

■ The next question is whether Plaintiffs have pled these statements with sufficient particularity to satisfy the pleading requirements of the PSLRA. As explained above, the PSLRA provides that in any private action premised on an untrue statement or omission of material fact, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). The PSLRA heightened pleading standards for securities cases were intended to prevent abusive suits where plaintiffs bring an action in hopes of using the discovery process to uncover evidence of fraud not alleged in the complaint. *In re Theragenics Corp. Sec. Litig.*, 105 F.Supp.2d 1342, 1355 (N.D.Ga.2000) (Thrash, J.). The Court will address the particularity of the allegations by reviewing the categories of alleged false misrepresentations and omissions outlined above.

First, Defendants argue that Plaintiffs have failed to plead specific facts to demonstrate that demand was in fact declining when Defendants were reporting that demand was accelerating. Defendants contend that the reported decrease in inventory during the relevant time period does not mean that demand was declining. Defendants' argument does not focus on the key allegations in Plaintiffs' claim that Defendants misrepresented declining demand. Plaintiffs have offered

specific facts in this regard to support the allegations that demand was declining at the time when Defendants reported accelerating demand. (*See, e.g.,* Compl. ¶¶ 73–76 for examples of S–A's class period misrepresentations about accelerating demand.) Defendants made these statements about increasing demand even in the face of declining orders from customers. (*See, e.g., Id.* ¶ 52.) According to the Complaint, S–A had a business analyzer program that forecasted orders for the next six to eight months based on historical purchasing data and information from customers about future orders. (*Id.* ¶ 88, 99–100.) Plaintiffs also allege that former employees reported that S–A's declining inventory resulted from a scaling back of production (*Id.* ¶¶ 10, 152.) prompted by decreased spending by S–A's customers (*Id.* ¶¶ 67–68, 99, 107–108). Financial and credit analysts also prepared reports detailing sales and bookings and forecasting demand. (*Id.* ¶¶ 110–11.) These examples show that Plaintiffs have sufficiently pled S–A's misrepresentation of the demand for its products by highlighting statements about increasing demand that allegedly were false and giving reasons why the statements were false at the time they were made.

Second, Plaintiffs allege with sufficient particularity that omissions related to the channel stuffing activity were false and misleading. Defendants reportedly offered incentives like discounts, followed a liberal return policy at odds with the Company's stated return policy, gave credits for warehousing, and agreed to allow customers to receive product without payment. These practices propped up demand by encouraging customers to purchase earlier than they would in the normal course. The Complaint details specific examples of such practices, explaining particular special terms and giving names of customers who took advantage of such incentives. (*See id.* ¶¶ 70, 83, 85 (encouraging customer to keep equipment and issuing credit for warehousing costs); *id.* ¶¶ 90–93 (liberal return policy); *id.* ¶¶ 114, 119–24, 130–34 (describing special terms offered); *id.* ¶¶ 116–18, 123 (which customers took advantage of offers).) Plaintiffs aver that non-disclosure of these practices was misleading because the practices encouraged larger orders than would be made in normal course and inevitably would depress future sales.

Third, in order to allege fraudulent accounting practices with sufficient particularity, a plaintiff should state what the unreasonable accounting practice was and how the defendants distorted the disclosed data. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1417–18 (3d Cir. 1997). In the present case, the unreasonable accounting practice was premature recognition of revenue in violation of the GAAP. The Complaint describes S–A's stated revenue recognition policy (Compl.¶¶ 126–27) and explains exactly how that policy was violated (*Id.* ¶¶ 104, 125, 128, 129–31, 135, 137–38). The discrepancy between the stated policy and actual practice distorted the reported financial information. (*Id.* ¶ 153.)

The Court concludes that Plaintiffs have pled misrepresentations and omissions of material fact with sufficient particularity to satisfy the standards of the PSLRA. Generally, notice pleading is all that is required so that the defendant will have fair notice of the claim and the grounds upon which it rests. Fed.R.Civ.P. 8. The Complaint in a securities fraud case should provide a "reasonable delineation" of the acts allegedly constituting fraud. *Anderson v. Transglobe Energy Corp.,* 35 F.Supp.2d 1363, 1369 (M.D.Fla.1999). In the present case, the Court finds that Plaintiffs have pled the facts with sufficient particularity to give Defendants no-

tice and enough details to allow an investigation of the claims asserted. Plaintiffs investigation has revealed facts to support pursuit of the claims, and they do not appear to be abusing litigation in order to use the discovery process to find evidence. Considering the amount of detail provided, Plaintiffs should be allowed to pursue discovery in an attempt to further develop the claims asserted.

### B. Scienter

Next, the Court must consider whether Plaintiffs' allegations of scienter are sufficient to support a claim and whether scienter has been pled with appropriate particularity. The Supreme Court has defined scienter as "a mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976). The PSLRA requires a plaintiff to set forth facts that give rise to a strong inference that the defendants acted with the required state of mind. 15 U.S.C. § 78u–4(b)(2). In the Eleventh Circuit, a plaintiff's pleadings are sufficient if the facts would be sufficient to raise a strong inference of severe recklessness. *Bryant,* 187 F.3d at 1283. A defendant's misrepresentations or omissions are severely reckless if they involve an "extreme departure from the standards of ordinary care" and present "a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Broad v. Rockwell Int'l Corp.,* 642 F.2d 929, 961 (5th Cir.1981). Furthermore, the Eleventh Circuit has rejected the notion that "allegations of motive and opportunity to commit fraud, standing alone, are sufficient to establish scienter." *Bryant,* 187 F.3d at 1285. The court of appeals pointed out that allegations of motive and opportunity could be relevant to demonstrate scienter but concluded that motive and opportunity are specific kinds of evidence rather than a substantive standard. *Id.* at 1286.

The district court can consider the allegations as a whole when determining the sufficiency of the allegations of scienter. *See Miller Indus.,* 12 F.Supp.2d at 1332. Moreover, even if individual pieces of evidence would be insufficient to prove a point, the combination of more than one piece of evidence may prove it. *In re MicroStrategy, Inc. Sec. Litig.,* 115 F.Supp.2d 620, 630–31 (E.D.Va.2000) (citing *Bourjaily v. United States,* 483 U.S. 171, 179–80, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)); *Zuckerman v. Foxmeyer Health Corp.,* 4 F.Supp.2d 618, 623 (N.D.Tex.1998) (concluding that Rule 9(b) and PLSRA were satisfied when "the totality of the allegations raises a strong inference of fraudulent intent"); *see also In re Miller Indus.,* 12 F.Supp.2d at 1332 (citing *Malone v. Microdyne Corp.,* 26 F.3d 471, 479 (4th Cir.1994) and noting that allegations of GAAP violations when combined with other circumstances suggesting fraud may create a strong inference of scienter); *In re Trex Company, Inc. Sec. Litig.,* 212 F.Supp.2d 596, 608 (W.D.Va.2002) (concluding that allegations of channel stuffing alone could not support a finding of reckless misconduct). *Compare In re Comshare, Inc. Sec. Litig.,* 183 F.3d 542, 553 (6th Cir.1999) (stating that plaintiffs must show more than possibility that individual defendants stood to receive greater compensation if the company performed well or could profit by selling their stock at artificially inflated prices illustrated motive and opportunity to commit securities fraud), *with In re Twinlab Corp. Sec. Litig.,* 103 F.Supp.2d 193, 206 (E.D.N.Y. 2000) (finding that profit motive alone is not enough to support strong inference of required state of mind).

Here, Plaintiffs allege that knowledge is demonstrated by: (1) the reported declines in demand and sales for competitors; (3) reduction in purchases by large customers; (4) existence of internal sales and bookings reports and other performance reports reportedly reviewed by the individual defendants; (5) availability of an internal system that forecasted future demand; (6) the scaling back of production; (7) the fact that terminated employees were asked to sign confidentiality agreements and agreements precluding assistance in future litigation; (8) unusual stock sales by McDonald and Haislip; and (9) the individual Defendants' approval of public filings. In addition, Plaintiffs claim that Defendants wanted to show good results during fiscal year 2001 because the Company celebrated its fiftieth anniversary during this time period. Finally, the individual defendants also stood to gain by misrepresenting the Company's 2001 performance because they received bonuses and stock compensation based on the Company's performance.

While each of these allegations in isolation would be insufficient to support a finding of severe recklessness, the combination of the facts included in the Complaint satisfies Plaintiffs' burden to plead scienter. The Court also finds that these allegations are sufficiently particular to satisfy the pleading requirements of the PSLRA. The particularity of the allegations is illustrated by the following example. In order to plead fraudulent accounting practices with particularity, a complaint should show facts that support the inference that the defendants "recklessly disregarded the deviance [from GAAP] or acted with gross indifference to the misrepresentations in its financial statements." *Chu v. Sabratek Corp.*, 100 F.Supp.2d 827, 838 (N.D.Ill.2000). Relevant facts are the magnitude of the accounting error, whether the defendants had prior notice of the error, and whether

the defendants played any role in calculating and disseminating the financial statement. *Id.* Here, Plaintiffs allege that Defendants have engaged in a number of accounting practices to artificially inflate and support S–A's stock price notwithstanding the downturn of its core business. Plaintiffs do not simply include conclusory allegations that such violations occurred. Instead, Plaintiffs specifically describe the types of accounting violations that occurred, which customers were involved, why Defendants had prior notice of the errors, and why the errors resulted in an overstatement of revenues. (*See,* e.g., Compl. ¶¶ 104, 125–131, 135, 137–38, 140, 153, 194.) Plaintiffs also allege that Defendants had prior notice of the error and that the individual defendants reviewed and approved financial statements containing the errors. (*See, e.g., id.* ¶¶ 13, 33, 35–36, 131–32, 153, 226.) These allegations of scienter are particular enough to satisfy the PSLRA's requirements. The detail included in the Complaint shows that Plaintiffs have investigated the claims asserted and are not using this action for the wrongful purpose of seeking discovery to uncover facts to support a fraud claim.

## C. Justifiable Reliance and Causation

Defendants have not moved to dismiss on the basis that Plaintiffs' allegations of justifiable reliance and causation are insufficient, but there are allegations in the Complaint relating to the final elements of the securities fraud claim. Plaintiffs allege that justifiable reliance on Defendants' false statements and wrongful non-disclosures can be shown by looking to analysts' reports about S–A's performance during the relevant time period and analysts' recommendations that investors purchase S–A stock. The analysts' optimistic view of the Company's stock could demon-

strate that Defendants' statements and non-disclosures disguised the Company's true financial condition, causing the losses about which Plaintiffs complain.

### Conclusion

Defendants' Motion to Dismiss Consolidated Class Action Complaint [37–1] is hereby **DENIED**; Plaintiffs' Motion for Oral Argument [45–1] is hereby **DENIED**.